# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP179 |
| COMPLETE TITLE: | Lands' End, Inc.,<br>　　　　　Plaintiff-Appellant,<br>　　v.<br>City of Dodgeville,<br>　　　　　Defendant-Respondent. |

ON BYPASS FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | July 12, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 16, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Iowa |
| JUDGE: | Craig R. Day |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ZIEGLER, J. concurs (Opinion filed). |
| DISSENTED: | PROSSER, J. and ROGGENSACK, C. J. dissent (Opinion filed). |
| NOT PARTICIPATING: | BRADLEY, R. G., J. did not participate. |

ATTORNEYS:

For the plaintiff-appellant, there were briefs by *Robert E. Shumaker*, *Michele Perreault*, and *DeWitt Ross & Stevens S.C.*, Madison, and oral argument by *Robert E. Shumaker*.

For the defendant-respondent, there was a brief by *Ted Waskowski*, *Amie B. Trupke*, and *Stafford Rosenbaum LLP*, and oral argument by *Amie B. Trupke*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP179
(L.C. No. 2009CV108)

STATE OF WISCONSIN     :     IN SUPREME COURT

**Lands' End, Inc.,**

       **Plaintiff-Appellant,**

   **v.**

**City of Dodgeville,**

       **Defendant-Respondent.**

**FILED**

**JUL 12, 2016**

Diane M. Fremgen
Clerk of Supreme Court

---

APPEAL from a judgment and order of the Circuit Court for Iowa County, Craig R. Day, Judge. *Affirmed*

¶1 SHIRLEY S. ABRAHAMSON, J. This is an appeal from a judgment and an order of the circuit court for Iowa County, Craig R. Day, Judge. This judgment and order arose in response to the 2013 directions of the court of appeals to the circuit court to enter judgment in favor of Lands' End, Inc., the plaintiff, and against the City of Dodgeville, the defendant,

for $724,292.68 "plus statutory interest and other interest or costs to which Lands' End may be entitled."[1]

¶2    The issue before this court is what is the correct rate of statutory interest to apply to Lands' End's judgment against the City.  More specifically, the issue is whether a party is entitled to interest at the statutory rate of interest in effect when an offer of settlement was made under Wis. Stat. § 807.01(4) (2009-10) or at the statutory rate of interest in effect when the party recovers a judgment under the amended version of the statute, Wis. Stat. § 807.01(4) (2013-14).[2]

¶3    We affirm the circuit court's judgment and order.  The circuit court awarded Lands' End interest at the statutory rate of interest in effect when Lands' End recovered a judgment, namely at a rate of "1 percent plus the prime rate" under the amended version of Wis. Stat. § 807.01(4) (2013-14).

¶4    Lands' End appealed from the circuit court's order and judgment, arguing that the circuit court's application of the

---

[1] Lands' End, Inc. v. City of Dodgeville, No. 2010AP1185, unpublished slip op., ¶30 (Wis. Ct. App. Sept. 12, 2013).

[2] The amended version of Wis. Stat. § 807.01(4) (2013-14) was adopted by 2011 Wis. Act 69.  The phrase "party recovers a judgment" in Wis. Stat. § 807.01(4) is not defined.  The meaning of the phrase is not pertinent to the issue before the court. Important for the instant case is that the parties do not dispute that Lands' End recovered a favorable judgment against the City only after the enactment of the amended version of Wis. Stat. § 807.01(4) (2013-14) lowered the statutory rate of interest recoverable when a party makes an offer of settlement and later recovers a judgment for greater than or equal to the amount of the offer.

amended version of the statute, Wis. Stat. § 807.01(4) (2013-14), was retroactive, disturbed Lands' End's vested rights in the 12 percent interest rate in effect in Wis. Stat. § 807.01(4) (2009-10) at the time it made its offer of settlement, and violated Wis. Stat. § 990.04 (2013-14) and the Due Process and Equal Protection clauses of the federal and state constitutions.

¶5  For the reasons set forth, we affirm the circuit court's judgment and order awarding Lands' End interest at "1 percent plus the prime rate,"[3] the rate in the amended version of the statute, Wis. Stat. § 807.01(4) (2013-14), which was in effect when Lands' End recovered its judgment against the City of Dodgeville.[4]

¶6  Awarding interest at "1 percent plus the prime rate" in the instant case is not a retroactive application of Wis. Stat. § 807.01(4) (2013-14) and Lands' End did not have a vested right in the 12 percent interest rate in effect in Wis. Stat. § 807.01(4) (2009-10) at the time Lands' End made its offer of

---

[3] The prime rate is "the rate banks charge for short-term unsecured loans to creditworthy customers." Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978, 954 F.2d 1279, 1332 (7th Cir. 1992). Because the prime rate reflects market conditions, the prime rate provides a basis to assess the time value of money withheld from a litigant for the duration elapsed between the rejected offer of settlement and eventual payment. See generally Michael S. Knoll, A Primer on Prejudgment Interest, 75 Tex. L. Rev. 293 (1996).

[4] We sometimes refer to Wis. Stat. § 807.01(4) (2013-14) as the "amended version" of the statute, and refer to Wis. Stat. § 807.01(4) (2009-10) as the "prior version" of the statute or the statute in effect on the date of the offer of settlement.

settlement. The circuit court's judgment and order do not violate the Due Process clauses of the federal and state constitutions or Wis. Stat. § 990.04 (2013-14). Moreover, because the legislature had a rational basis for changing the applicable interest rate from 12 percent to "1 percent plus the prime rate" and did not create an irrational or arbitrary classification, awarding interest under the amended version of the statute, Wis. Stat. § 807.01(4) (2013-14), does not violate the Equal Protection clauses of the federal and state Constitutions.

¶7 Our decision in the instant case is contrary to the opinion of the court of appeals in Johnson v. Cintas Corp. No. 2, 2015 WI App 14, 360 Wis. 2d 350, 860 N.W.2d 515.[5] In Johnson, the court of appeals held that applying the amended version of the rate of interest to offers of settlement made prior to the effective date of the amended version would disturb a vested right to interest. Johnson is an officially published opinion of the court of appeals. "Officially published opinions of the court of appeals shall have statewide precedential effect." Wis. Stat. § 752.41(2) (2013-14). We overrule the Johnson decision.

---

[5] This court granted review in Johnson v. Cintas Corp. No. 2, 2015 WI App 14, 360 Wis. 2d 350, 860 N.W.2d 515, to address the same basic issues we address in the instant case. Before Johnson was fully briefed, the parties voluntarily dismissed the appeal with the permission of the court. See Wis. Stat. § (Rule) 809.18; see also Wis. S. Ct. Internal Operating Procedures II.L.4 (reprinted in Vol. 6, Wis. Stats.).

4

¶8 Accordingly, we affirm the judgment and order of the circuit court in the instant case.

I

¶9 The facts and procedural history of the instant case are not in dispute for the purposes of this appeal.

¶10 The instant case is one of several cases representing nearly a decade of litigation between Lands' End and the City challenging the City's appraisal of the fair market value (and resulting property tax assessments) of Lands' End's headquarters. We do not recite the entire procedural history of the litigation between Lands' End and the City. Instead, we refer to pertinent aspects of the procedural history.

¶11 Lands' End is a Delaware corporation with headquarters in the City of Dodgeville, Wisconsin, occupying six parcels of land. For ease of discussion, we will refer to these six parcels collectively as Lands' End's headquarters.

¶12 Prior to the instant case, in a case concerning the amount of property taxes assessed for 2005 and 2006, the circuit court for Iowa County, Edward Leineweber, Judge, ruled in Lands' End's favor, rejecting the City of Dodgeville's valuation methodology and concluding that the fair market value of Lands' End's headquarters was $25,000,000.

¶13 In the instant case, Lands' End challenged the 2008 property tax assessment on its headquarters and sought a refund of taxes. Lands' End argued that the City erroneously based its 2008 property tax assessment on the same valuation methodology rejected in the 2005 and 2006 tax assessment case.

5

¶14 On July 1, 2009, Lands' End made an offer of settlement in the instant case under Wis. Stat. § 807.01(4) (2009-10) for $724,000. The City rejected Lands' End's offer.

¶15 Lands' End subsequently moved for summary judgment, arguing that issue preclusion, together with the undisputed fact that the value of Lands' End's headquarters did not change between 2006 and 2008, entitled it to judgment as a matter of law. On April 19, 2010, the circuit court for Iowa County, William Dyke, Judge, denied Lands' End's motion for summary judgment and affirmed the City's valuation of Lands' End's headquarters.

¶16 Lands' End appealed the circuit court's denial of summary judgment. The court of appeals reversed the circuit court, holding that the circuit court erroneously denied Lands' End's motion for summary judgment. The court of appeals remanded the matter to the circuit court "with directions to enter judgment in favor of Lands' End in the amount of $724,292.68, plus statutory interest and any other interest or costs to which Lands' End may be entitled."[6]

¶17 On remand, the parties disagreed regarding the applicable rate of statutory interest to which Lands' End was entitled. Lands' End moved for entry of judgment, arguing that it was entitled to interest at the 12 percent rate specified in Wis. Stat. § 807.01(4) (2009-10); this version of § 807.01(4)

---

[6] Lands' End, Inc. v. City of Dodgeville, No. 2010AP1185, unpublished slip op., ¶30 (Wis. Ct. App. Sept. 12, 2013).

6

was in effect when Lands' End made its offer of settlement. In contrast, the City argued that Lands' End was entitled to interest at "1 percent plus the prime rate" as specified in the amended version of Wis. Stat. § 807.01(4) (2013-14); this version of § 807.01(4) was in effect when Lands' End recovered a judgment.

¶18 The circuit court agreed with the City, awarding interest at "1 percent plus the prime rate" as specified in the amended version of Wis. Stat. § 807.01(4) (2013-14). The circuit court concluded that "1 percent plus the prime rate" was, at the relevant time, 4.25 percent, a rate substantially less than the 12 percent interest provided for in Wis. Stat. § 807.01(4) (2009-10). Lands' End appealed. We granted the City's petition to bypass the court of appeals. See Wis. Stat. § (Rule) 809.60.

II

¶19 The instant case involves the interpretation of statutes and constitutional provisions and their application to undisputed facts. These are questions of law that we decide independently of the circuit court and the court of appeals while benefitting from their analyses. Milwaukee Journal Sentinel v. Wis. Dep't of Admin., 2009 WI 79, ¶14, 319 Wis. 2d 439, 768 N.W.2d 700.

¶20 Lands' End challenges the constitutionality of Wis. Stat. § 807.01(4) (2013-14) as applied to it. Lands' End has the burden of proving beyond a reasonable doubt that Wis. Stat.

7

§ 807.01(4) is unconstitutional as applied to it. See Soc'y Ins. v. LIRC, 2010 WI 68, ¶27, 326 Wis. 2d 444, 786 N.W.2d 385.

III

¶21 We first examine the texts of the statutes governing offers of settlement and the rate of interest to which a party is entitled if the party making the offer of settlement subsequently recovers a judgment for greater than or equal to the amount of the offer. We then turn to the court of appeals' decision in Johnson before addressing Lands' End's five legal arguments in support of its position.

¶22 Wisconsin Stat. § 807.01, entitled "Settlement offers," provides that if a party makes an offer of settlement and subsequently recovers a judgment for greater than or equal to the amount of its offer, the offeror is "entitled" to interest on the amount recovered running from the date of its offer. See Wis. Stat. § 807.01(4) (2009-10) and Wis. Stat. § 807.01(4) (2013-14) for two versions of this statute.

¶23 The two versions of the statutes set forth two different rates of statutory interest. The dispute is about which version of the statute (and thus which rate of statutory interest) applies in the instant case.

¶24 Prior to 2011, Wis. Stat. § 807.01(4) (2009-10) provided that the party making an offer of settlement may be entitled to interest at the annual rate of 12 percent on the amount recovered from the date of the offer of settlement until the amount is paid.

¶25 Section 807.01(4) (2009-10) stated in relevant part as follows (with emphasis added):

> If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, <u>the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid</u>. . . .

¶26 In 2011 the legislature adopted 2011 Wis. Act 69, amending the statute. Act 69 amended Wis. Stat. § 807.01(4) (2009-10) to provide that the party making an offer of settlement is entitled to interest at an annual rate equal to 1 percent plus the applicable prime rate in effect on January 1 of the year in which the judgment is entered if the judgment is entered on or before June 30 of that year, or in effect on July 1 of the year in which the judgment is entered if the judgment is entered after June 30 of that year.

¶27 Section 807.01(4) (2013-14) states in relevant part as follows (with emphasis added):

> If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, <u>the party is entitled to interest at an annual rate equal to 1 percent plus the prime rate</u> in effect on January 1 of the year in which the judgment is entered if the judgment is entered on or before June 30 of that year or in effect on July 1 of the year in which the judgment is entered if the judgment is entered after June 30 of that year, as reported by the federal reserve board in federal reserve statistical release H. 15, on the amount recovered from the date of the offer of settlement until the amount is paid. . . .

9

¶28 Both versions of Wis. Stat. § 807.01(4) impose the same three basic requirements in order for a party who makes an offer of settlement to be entitled to interest on a judgment recovered: (1) an (unaccepted) offer of settlement; (2) recovery of a judgment; and (3) a judgment for greater than or equal to the amount of the offer. "[I]nterest may not be imposed unless an actual judgement is entered in a case." DeWitt Ross & Stevens v. Galaxy Gaming & Racing Ltd. P'ship, 2004 WI 92, ¶33, 273 Wis. 2d 577, 682 N.W.2d 839 (citing Osman v. Phipps, 2002 WI App 170, ¶¶8, 12, 256 Wis. 2d 589, 649 N.W.2d 701) (declining to award interest when no judgment was recovered)); see also Tomsen v. Secura Ins., 2003 WI App 187, ¶10, 266 Wis. 2d 491, 668 N.W.2d 794 (awarding interest because a judgment was recovered based on a stipulation).

¶29 In the instant case, it is undisputed that Lands' End meets these three requirements and is therefore entitled to interest on its judgment. The question remains, however, what statutory rate of interest applies in the instant case.

¶30 To support its position that the applicable rate of interest is set forth in the earlier version of Wis. Stat. § 807.01(4) (2009-10), Lands End relies on the court of appeals' decision in Johnson v. Cintas Corp. No. 2, 2015 WI App 14, 360 Wis. 2d 350, 860 N.W.2d 515.

¶31 Johnson decided the same issue that is presented in the instant case. The Johnson decision did not, however, address all the legal arguments presented in the instant case.

10

¶32 In Johnson, the plaintiff, Johnson, made an offer of settlement in 2008.[7] After the offer of settlement was made but before Johnson recovered a judgment, the legislature enacted 2011 Wis. Act 69.[8] In 2013, after 2011 Wis. Act 69 took effect, Johnson recovered more than the amount of his offer of settlement.[9] Johnson sought interest on the judgment from the time the offer of settlement at 12 percent annually from the date of the offer of settlement pursuant to Wis. Stat. § 807.01(4) (2007-08).[10]

¶33 The circuit court in Johnson applied the interest rate in effect when Johnson recovered his judgment——"1 percent plus the prime rate"——rather than the 12 percent rate in effect at the time of Johnson's offer of settlement.[11]

¶34 The court of appeals reversed the circuit court in Johnson, reasoning that awarding interest at "1 percent plus the prime rate" when a party made an offer of settlement under the prior 12 percent interest rate would be unconstitutional.[12] The court of appeals concluded that the interest rate to be applied

---

[7] Johnson, 360 Wis. 2d 350, ¶5.

[8] Johnson, 360 Wis. 2d 350, ¶17.

[9] Johnson, 360 Wis. 2d 350, ¶10.

[10] Johnson, 360 Wis. 2d 350, ¶2.

[11] Johnson, 360 Wis. 2d 350, ¶11.

[12] Johnson, 360 Wis. 2d 350, ¶29.

is the rate in effect on the date of the offer of settlement.[13] The court of appeals stated that applying a statutory interest rate enacted after the offer of settlement adversely affects the expectations of both parties and "would substantially impair Johnson's vested right to interest on the judgment at twelve percent."[14]

¶35 For the reasons set forth, we disagree with the court of appeals' decision in Johnson and are not persuaded by Lands' End's legal arguments.

¶36 Lands' End's arguments are as follows:

(1) Applying the amended version of Wis. Stat. § 807.01(4) (2013-14), which fixes the statutory rate of interest at "1 percent plus the prime rate," to Lands' End's judgment in the instant case is a retroactive application of the statute;

---

[13] Johnson, 360 Wis. 2d 350, ¶29.

[14] See Johnson, 360 Wis. 2d 350, ¶¶25-29.

We note, however, that the court of appeals in Johnson misstated the balancing test, stating that "[i]f retroactive legislation causes 'substantial impairment of a vested right,' it is unconstitutional unless justified by a significant and legitimate public interest." See Johnson, 360 Wis. 2d 350, ¶15 (quoting Matthies v. Positive Safety Mfg. Co., 2001 WI 82, ¶31, 244 Wis. 2d 720, 628 N.W.2d 842). In Society Insurance v. Labor & Industry Review Commission, 2010 WI 68, ¶30 n.12, 326 Wis. 2d 444, 786 N.W.2d 385, we held that "requiring a showing of a 'significant and legitimate public purpose' in the course of a due process challenge improperly subjects the retroactive legislation to a heightened level of scrutiny. Retroactive legislation must be 'justified by a rational legislative purpose.'"

12

(2) Lands' End had a vested right in the 12 percent statutory interest rate in the version of Wis. Stat. § 807.01(4) (2009-10) in effect when Lands' End made its offer of settlement;

(3) Applying Wis. Stat. § 807.01(4) (2013-14), which provides for interest at "1 percent plus the prime rate," to Lands' End's judgment in the instant case violates the Due Process clauses of the federal and state constitutions;

(4) Applying Wis. Stat. § 807.01(4) (2013-14), which provides for interest at "1 percent plus the prime rate," to Lands' End's judgment in the instant case violates Wis. Stat. § 990.04; and

(5) Applying Wis. Stat. § 807.01(4) (2013-14), which provides for interest at "1 percent plus the prime rate," to Lands' End's judgment in the instant case violates the Equal Protection clauses of the federal and state constitutions.

¶37 Although we address each of these legal arguments separately, they are interrelated, not isolated. Lands' End relies on the same or similar approaches in each argument to buttress its position.

(1)

¶38 Applying the "1 percent plus the prime rate" language in effect when Lands' End recovered its judgment was not a retroactive application of the amended version of Wis. Stat. § 807.01(4) (2013-14) to Lands' End's judgment, because Lands'

13

End had not recovered a judgment before the amended version of the statute took effect.

¶39 Deciding when a statute applies retroactively is not always easy; it is not a mechanical task.  "The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event."  Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994).

¶40 To put into perspective the issue of whether the amended version of Wis. Stat. § 807.01(4) (2013-14) is retroactive legislation, we state and apply principles of the law of retroactivity.

¶41 First, the party challenging legislation as unconstitutionally retroactive "has the burden of proving the statute, as applied to it, is unconstitutional beyond a reasonable doubt."  Soc'y Ins. v. LIRC, 2010 WI 68, ¶27, 326 Wis. 2d 444, 786 N.W.2d 385.  The burden is thus on Lands' End in the instant case.

¶42 Second, "[t]he general rule in Wisconsin is that legislation is presumptively prospective unless the statutory language clearly reveals either expressly or by necessary implication an intent that the statute apply retroactively." Betthauser v. Med. Protective Co., 172 Wis. 2d 141, 147, 493

N.W.2d 40 (1992) (quoting U.S. Fire Ins. Co. v. E.D. Wesley Co., 105 Wis. 2d 305, 319, 313 N.W.2d 833 (1982)).[15]

¶43 The amended version of Wis. Stat. § 807.01(4) (2013-14) does not clearly reveal a legislative intent that the statute apply retroactively. See 2011 Wis. Act 69 (adopting Wis. Stat. § 807.01(4) (2013-14)).

¶44 In contrast, when the 12 percent rate in Wis. Stat. § 807.01(4) (2009-10) first became effective in 1980, the legislature clearly specified that the statute did not apply retroactively: "The treatment or creation of sections 807.01(4) . . . of the statutes apply only to actions commenced on or after the effective date of this Act." § 5, ch. 271, Laws of 1979.

¶45 When the legislature adopted 2011 Wis. Act 69 reducing the rate of interest to "1 percent plus the prime rate," the legislature did not use similar limiting language. Rather, the

---

[15] "If, however, a statute is procedural or remedial, rather than substantive, the statute is generally given retroactive application unless retroactive application would impair contracts or disturb vested rights." Betthauser v. Med. Protective Co., 172 Wis. 2d 141, 147, 493 N.W.2d 40 (1992) (citing Steffen v. Little, 2 Wis. 2d 350, 357-58, 86 N.W.2d 622 (1957)). Because we conclude that awarding interest at the "1 percent plus the prime rate" in effect when Lands' End recovered its judgment is not a retroactive application of Wis. Stat. § 807.01(4) and does not impair any vested rights, we need not decide whether Wis. Stat. § 807.01(4) is substantive or procedural. Even if interest under Wis. Stat. § 807.01(4) is, as Lands' End argues, substantive rather than procedural, the statute is not being applied retroactively and does not disturb vested rights.

legislature stated that 2011 Wis. Act 69 "first applies to an execution on a judgment entered on the effective date of this subsection." 2011 Wis. Act 69, § 4. The parties do not dispute that Lands' End did not "execut[e] on judgment" prior to the effective date of 2011 Wis. Act 69.

¶46 We conclude that the amended version of Wis. Stat. § 807.01(4) (2013-14) does not clearly reveal a legislative intent that the statute apply retroactively. Further analysis is required to determine whether Wis. Stat. § 807.01(4) (2013-14) applies retroactively in the instant case.

¶47 Third, another principle guiding the determination of retroactivity in the present case is that a statute does not operate retroactively simply because it is applied "in a case arising from conduct antedating the statute's enactment, or upsets expectations based on prior law." State v. Chrysler Outboard Corp., 219 Wis. 2d 130, 172, 580 N.W.2d 203 (1998) (quoting Landgraf, 511 U.S. at 269-70).[16]

---

[16] See also Republic Nat'l Bank v. United States, 506 U.S. 80, 100 (1992) (Thomas, J., concurring in part and concurring in judgment) ("[N]ot every application of a new statute to a pending case will produce a 'retroactive effect.'"); Cox v. Hart, 260 U.S. 427, 435 (1922) ("A statute is not made retroactive merely because it draws upon antecedent facts for its operation.") (citations omitted); 2 Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 41:1, at 385 (7th ed. 2009) ("[A] statute is not rendered retroactive merely because the facts upon which its subsequent action depends are drawn from a time antecedent to its effective date.")

16

¶48 Thus the fact that the amended version of Wis. Stat. § 807.01(4) (2013-14) applies to Lands' End's pending instant case, standing alone, does not render the statute retroactive.

¶49 Fourth, a statute operates retroactively if, among other things, it "takes away or impairs vested rights . . . ." Chrysler Outboard, 219 Wis. 2d at 172 (quoting In re Estate of Bilsie, 100 Wis. 2d 342, 357, 302 N.W.2d 508 (Ct. App. 1981)). But "[t]he mere expectation of a future benefit or contingent interest does not create a vested right." 2 Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 41:6, at 456-57 (7th ed. 2009) (emphasis added).[17]

¶50 Thus, when the existence of a right is contingent on an uncertain future event (here, recovering a judgment), and that event has not occurred prior to the enactment of a statute altering the legal effect of that uncertain future event, the party challenging the application of the revised statute has no

---

[17] Cases in other jurisdictions agree that a party does not have a vested right when the existence of the right asserted is contingent on some uncertain future event. See, e.g., U.S. Cold Storage v. City of La Vista, 831 N.W.2d 23, 33 (Neb. 2013) ("To be considered a vested right, the right must be 'fixed, settled, absolute, and not contingent upon anything.'") (quoted source omitted) (emphasis added); Rehor v. Case W. Reserve Univ., 331 N.E.2d 416, 420 (Ohio 1975) ("'[A] vested right is a right fixed, settled, absolute, and not contingent upon anything.'") (emphasis added); Wylie v. Grand Rapids City Comm'n, 292 N.W. 668, 674 (Mich. 1940) ("'A vested right . . . is a right so fixed, that it is not dependent on any act, contingency, or decision to make it more secure.") (emphasis added).

17

vested right in the application of the prior law, and the new law is not being retroactively applied.

¶51 The explanation of this point in <u>Winiarski v. Miicke</u>, 186 Wis. 2d 409, 521 N.W.2d 162 (Ct. App. 1994), is instructive.

¶52 In <u>Winiarski</u>, a child was adopted by his grandparents.[18] At the time of the adoption, an adopted child could inherit from his or her birth parent through intestate succession.[19] After the adoption but before the child's biological father died, a new statute was enacted declaring (with exceptions not relevant here) that an adopted child could <u>not</u> inherit from his or her birth parent through intestate succession.[20] Subsequently, the child's biological father died intestate, and the child sought to take from his biological father's estate, arguing that the new statute was prospective only and did not apply to his situation.[21]

¶53 The court of appeals held in <u>Winiarski</u> against the child as follows:

> [T]he right to take by intestate succession does not exist until the decedent dies intestate. Thus, intestate succession is governed by statutes 'in force at the time of the death of the intestate.' Accordingly, a statute enacted after an adoption that alters the effect of the adoption on the right to

---

[18] <u>In the Matter of the Estate of Winiarski v. Miicke</u>, 186 Wis. 2d 409, 412, 521 N.W.2d 162 (Ct. App. 1994).

[19] See <u>Winiarski</u>, 186 Wis. 2d at 411.

[20] See <u>Winiarski</u>, 186 Wis. 2d at 411.

[21] <u>Winiarski</u>, 186 Wis. 2d at 411-12.

inherit from a[n] intestate decedent is <u>prospective</u>, <u>not retroactive</u>, as long as the statute was effective before the intestate's death.[22]

¶54 In the instant case, like <u>Winiarski</u>, Lands' End's right at the time the amended version of the statute took effect was contingent on an uncertain future event, namely Lands' End's recovery of a judgment for greater than or equal to the amount of its offer of settlement. Thus, as in <u>Winiarski</u>, the amended version of the statute is not retroactive, because Lands' End's right under the amended version of the statute at the effective date of the statute was inchoate, not perfected, not ripened, nor accrued. Lands' End had not yet recovered a judgment.

¶55 Fifth, although not dispositive, the presumption against retroactive application of a statute is premised on considerations of fairness.[23] Persons should have an opportunity

---

[22] <u>Winiarski</u>, 186 Wis. 2d at 412-13 (internal citations omitted) (emphasis in original).

[23] See <u>Landgraf v. USI Film Prods.</u>, 511 U.S. 244, 265 (1994) ("As Justice Scalia has demonstrated, the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'") (quoting <u>Kaiser Aluminum & Chem. Corp. v. Bonjorno</u>, 494 U.S. 827, 855 (1990) (Scalia, J., concurring)).

See also 2 Singer, <u>supra</u> note 16, § 41:6, at 457 ("Judicial attempts to explain whether [the] protection against retroactive interference [with vested rights] will be extended reveal that elementary considerations of fairness and justice govern.").

to know in advance what the law is and to conform their conduct accordingly.[24] Furthermore, settled expectations should not be lightly disrupted.[25]

¶56 Although Lands' End argues that it had a settled expectation of 12 percent interest based on its offer of judgment, which antedated the enactment of Wis. Stat. § 807.01(4) (2013-14), that expectation does not necessarily render Wis. Stat. § 807.01(4) (2013-14) retroactive or make its application to Lands' End in the instant case unfair. "If every time a man relied on existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever." Lon L. Fuller, The Morality of Law 60 (1964).

¶57 Moreover, it is questionable whether an expectation based on the prior law was reasonable. To obtain interest at the former 12 percent statutory interest rate, Lands' End had to recover a judgment for as much or more than the amount of its offer of settlement. The statute and the case law explicitly say so.[26] Lands' End had not recovered a judgment when the

---

[24] See Landgraf, 511 U.S. at 265.

[25] See Landgraf, 511 U.S. at 265.

[26] See DeWitt Ross & Stevens v. Galaxy Gaming & Racing Ltd. P'ship, 2004 WI 92, ¶33, 273 Wis. 2d 577, 682 N.W.2d 839 (citing Osman v. Phipps, 2002 WI App 170, ¶¶8, 12, 256 Wis. 2d 589, 649 N.W.2d 701) ("[I]nterest may not be imposed unless an actual judgment is entered in a case."); see also Tomsen v. Secura Ins., 2003 WI App 187, ¶10, 266 Wis. 2d 491, 668 N.W.2d 794 (interest awarded because judgment was recovered based on a stipulation).

20

former 12 percent statutory interest rate was repealed, and the possibility remained that it would not recover a judgment at all or would recover a judgment for less than the offer of settlement. Thus, Lands' End's claim that it expected to be governed by the former statute rests on shaky ground.

¶58 Furthermore, it is not an unreasonable burden on Lands' End or unjust or impractical to apply the amended version of the statutory rate of interest to Lands' End's judgment in the instant case. When the 12 percent interest rate became effective in 1980, 12 percent was lower than the predominant market interest rate.[27] In 2009, however, when Lands' End made its offer of settlement, market interest rates were 3.25 percent——considerably lower than when the 12 percent statutory interest rate in Wis. Stat. § 807.01(4) (2009-10) went into effect in 1980.

¶59 The interest rate in Wis. Stat. § 807.01(4) is apparently designed to place parties in roughly the same position they would have been had the amount of the judgment

---

[27] See Bd. of Governors of the Fed. Reserve Sys., Bank Prime Loan Rate Changes: Historical Dates of Changes and Rates (Dec. 21, 2014, 12:41 PM), https://research.stlouisfed.org/fred2/data/PRIME.txt (stating prime rates in 1980 fluctuated between 11 percent and 21 percent).

recovered been paid immediately.[28]  When we consider the market interest rate during the entire period of the instant case, the interest rate in the amended version of the statute compensated Lands' End for approximately the same amount had the amount of the judgment recovered been paid immediately.

¶60  By tying the interest rate in Wis. Stat. § 807.01(4) (2013-14) to market rates, the legislature ensured that a party like Lands' End that recovers a judgment for as much or more than the amount of an offer of settlement after the effective date of the statute is fairly and reasonably compensated for being unable, during the pendency of the litigation, to use the money to which it is entitled.

¶61  Elsewhere, Lands' End argues that it would be unfair to award it interest at "1 percent plus the prime rate" because, but for the circuit court's erroneous denial of summary judgment, Lands' End would have recovered a judgment prior to the effective date of 2011 Wis. Act 69, and thus would have been entitled to interest at 12 percent rather than "1 percent plus the prime rate."

¶62  We disagree with Lands' End when it argues that it is unfair to award interest at the lower interest rate when its

---

[28] See Michael S. Knoll, A Primer on Prejudgment Interest, 75 Tex. L. Rev. 293, 296 (1996) ("The payment of prejudgment interest . . . ensures that the plaintiff receives full compensation for its losses and that the defendant pays the full pe[n]alty, thereby putting both parties in the same position that they would have been in if the judgment had been paid immediately.").

failure to recover a judgment before the amended statute was enacted is due to the circuit court's error.

¶63 Although in the instant case there is arguably an identifiable point when Lands' End should have recovered its judgment (April 19, 2010, the date the circuit court denied summary judgment), other cases may present more complicated factual situations in which it would be difficult, if not impossible, to identify the point at which an offeror of settlement "should" have recovered a judgment. Moreover, the text of Wis. Stat. § 807.01(4) ties the applicable interest rate to the "recover[y of] a judgment," not when a judgment "should have been" recovered.

¶64 In sum, applying the amended version of the statutory rate of interest to Lands' End's judgment in the instant case is not retroactive, unfair, unreasonable, or unduly burdensome to Lands' End. Rather, the amended version of the statute fosters legitimate legislative purposes.[29]

¶65 Sixth, Lands' End argues that the amended version of Wis. Stat. § 807.01(4) (2013-14) applies retroactively because it "t[ook] away or impair[ed] vested rights" Lands' End acquired

---

[29] See also infra, ¶¶106-108 (discussing the purposes of Wis. Stat. § 807.01(4) (2013-14)).

under Wis. Stat. § 807.01(4) (2009-10) when it made its offer of settlement.[30]

¶66 We turn now to a discussion of the concept of a "vested right," a concept related to retroactivity and to Lands' End's other arguments.

(2)

¶67 Lands' End did not have a vested right in the 12 percent rate of interest in effect when it made its offer of settlement.

¶68 Defining a "vested right" is somewhat difficult, and some definitions are opaque, circular, and conclusory. One such definition of a vested right is that a vested right is a presently legally enforceable right, not dependent on uncertain future events. Statutes and Statutory Construction (also known as Sutherland Statutory Construction), for example, describes several definitions of "vested right," including "an immediate right of present enjoyment or a present fixed right of future enjoyment." 2 Norman J. Singer & J.D. Shambie Singer, Statutes

---

[30] A law is viewed as retroactive if it "'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past . . . .'" State v. Chrysler Outboard Corp., 219 Wis. 2d 130, 172, 580 N.W.2d 203 (1998) (quoting In re Estate of Bilsie, 100 Wis. 2d 342, 357, 302 N.W.2d 508 (Ct. App. 1981)).

Lands' End does not argue that the application of the amended version of Wis. Stat. § 807.01(4) to Lands' End was retroactive because it "creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past."

and Statutory Construction § 41:6, at 456 (7th ed. 2009) (footnote omitted).

¶69 Our case law describes vested rights similarly: "[t]he concept of vested rights is conclusory——a right is vested when it has been so far perfected that it cannot be taken away by statute." Soc'y Ins. v. LIRC, 2010 WI 68, ¶29, 326 Wis. 2d 444, 786 N.W.2d 385 (quoting Neiman v. Am. Nat'l Prop. & Cas. Co., 2000 WI 83, ¶14, 236 Wis. 2d 411, 613 N.W.2d 160); see also In re Paternity of John R.B., 2005 WI 6, ¶20, 277 Wis. 2d 378, 690 N.W.2d 849; Black's Law Dictionary 1520 (10th ed. 2014) (defining "vested right" as, among other things, "[a] right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent.").

¶70 A similar definition of a "vested right" has been formulated by the court in another context.  The court has stated that "[a]n existing right of action which has accrued under the rules of the common law or in accordance with its principles is a vested property right." Matthies v. Positive Safety Mfg. Co., 2001 WI 82, ¶22, 244 Wis. 2d 720, 628 N.W.2d 842 (quoting Hunter v. Sch. Dist. Gale-Ettrick-Trempealeau, 97 Wis. 2d 435, 445, 293 N.W.2d 515 (1980)).

¶71 Lands' End argues in effect that it has a vested right to the 12 percent statutory rate of interest in Wis. Stat. § 807.01(4) because its remedy under § 807.01(4) (2009-10) was "perfected" or "accrued" before Wis. Stat. § 807.01(4) (2013-14) took effect and is, therefore, a vested property right.

25

¶72 We disagree with Lands' End. Under both versions of Wis. Stat. § 807.01(4), Lands' End did not acquire a legally enforceable right to recover interest until it recovered a judgment.[31] Unlike, for example, a right of action for negligence, which accrues (and is legally enforceable) on the date of the accident and injury, see Matthies, 244 Wis. 2d at 738-39, Lands' End's right to recover interest under Wis. Stat. § 807.01(4) accrues (and becomes legally enforceable) only after the recovery of a judgment. Changing the interest rate in Wis. Stat. § 807.01(4) simply alters the legal consequence of events not yet completed. Before Lands' End recovered a judgment, its right to interest was inchoate.

¶73 The principle that vesting of a right does not occur until the right is no longer contingent is illustrated in Trinity Petroleum, Inc. v. Scott Oil Co., Inc., 2007 WI 88, 302 Wis. 2d 299, 735 N.W.2d 1.

¶74 In Trinity, we addressed, among other things, whether a party defending against an allegedly frivolous claim prior to the repeal of Wis. Stat. § 814.025 (2003-04), which authorized the recovery of costs and reasonable attorneys fees incurred in

---

[31] See DeWitt Ross & Stevens v. Galaxy Gaming & Racing Ltd. P'ship, 2004 WI 92, ¶33, 273 Wis. 2d 577, 682 N.W.2d 839 (citing Osman v. Phipps, 2002 WI App 170, ¶¶8, 12, 256 Wis. 2d 589, 649 N.W.2d 701) ("[I]nterest may not be imposed unless an actual judgment is entered in a case."); see also Tomsen v. Secura Ins., 2003 WI App 187, ¶10, 266 Wis. 2d 491, 668 N.W.2d 794 (interest awarded when judgment was recovered based on a stipulation).

defending against a frivolous claim brought before the repeal of § 814.025, had a "vested right."[32]

¶75 The Trinity court concluded that "[t]he legislature did not create a substantive, vested right to costs and reasonable attorneys fees in former Wis. Stat. § 814.025 (2003-04)."[33] Rather, the court explained that "[o]nly upon a finding by a circuit court that an action was frivolous under § 814.025 (when that statute was still in effect) would an aggrieved party obtain a vested right to recover reasonable expenses under the statute."[34] Because the circuit court "made no such finding in [Trinity] before the repeal of § 814.025," the aggrieved party had no vested right under the repealed statute.[35]

---

[32] Trinity Petroleum, Inc. v. Scott Oil Co., Inc., 2007 WI 88, ¶48, 302 Wis. 2d 299, 735 N.W.2d 1.

[33] Trinity, 302 Wis. 2d 299, ¶48.

[34] Trinity, 302 Wis. 2d 299, ¶48 (emphasis added).

[35] Trinity, 302 Wis. 2d 299, ¶48.

Because the Trinity court concluded that the adoption of a new rule for sanctions and the repeal of Wis. Stat. § 814.025 were procedural rules generally applied retroactively, the Trinity court remanded the cause to the circuit court to determine whether applying the new rule governing frivolous actions that case commenced under the former rule governing frivolous actions "impose[d] an unreasonable burden on the party charged with complying with the new rule's requirements." Trinity, 302 Wis. 2d 299, ¶7.

Because we conclude that Wis. Stat. § 807.01(4) (2013-14) does not take away or impair vested rights and is not an undue burden in the instant case, no remand is needed to determine whether application of the amended version of the statute imposes an unreasonable burden.

27

¶76 As with the finding of frivolousness in Trinity, a party has no right to recover interest from the date of an offer of settlement under either version of Wis. Stat. § 807.01(4) unless the party recovers a judgment for as much or more than the amount of the offer.

¶77 In the instant case, Lands' End did not recover a judgment until after Wis. Stat. § 807.01(4) (2013-14) took effect. Lands' End thus stands in a position similar to that of the defendant in Trinity. Lands' End's entitlement to interest under Wis. Stat. § 807.01(4) (2009-10) was contingent on a subsequent determination by a court, namely that Lands' End was entitled to a judgment for greater than or equal to the amount of its offer of settlement.

¶78 Also like the defendant in Trinity, Lands' End did not obtain such a determination while Wis. Stat. § 807.01(4) (2009-10) was in effect. Under these circumstances, Lands' End did not have a vested right to recover interest under Wis. Stat. § 807.01(4) (2009-10). See 2 Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 41:6, at 456-57 (7th ed. 2009) ("The mere expectation of a future benefit or contingent interest does not create a vested right.").

¶79 Accordingly, applying the "1 percent plus the prime rate" in the amended version of Wis. Stat. § 807.01(4) did not

"take[] away or impair[] vested rights acquired [by Lands' End] under existing laws . . . ."[36]

(3)

¶80 Lands' End's claim under the Due Process clauses of the federal and state constitutions fails.

¶81 Lands' End's Due Process claim rests on Wis. Stat. § 807.01(4) (2013-14) having "a retroactive effect," and Lands' End's having "a vested right" under Wis. Stat. § 807.01(4) (2009-10). See Soc'y Ins., 326 Wis. 2d 444, ¶29.

¶82 As we explained previously, awarding interest to Lands' End under Wis. Stat. § 807.01(4) (2013-14) does not have a retroactive effect. Furthermore, Lands' End did not acquire a vested right to the statutory interest rate in Wis. Stat. § 807.01(4) (2009-10) while Wis. Stat. § 807.01(4) (2009-10) was in effect because Lands' End did not recover a judgment until after Wis. Stat. § 807.01(4) (2013-14) took effect. Accordingly, awarding interest to Lands' End at "1 percent plus the prime rate" under Wis. Stat. § 807.01(4) (2013-14) does not

---

[36] See Chrysler Outboard, 219 Wis. 2d at 172 (quoting Bilsie, 100 Wis. 2d at 357).

take away or impair any vested rights.[37] We therefore conclude that applying the amended statute to Lands' End in the instant case does not violate due process.

(4)

¶83 Awarding interest to Lands' End under the amended version of Wis. Stat. § 807.01(4) (2013-14) does not violate Wis. Stat. § 990.04 (2013-14).

¶84 Wisconsin Stat. § 990.04 (2013-14), entitled "Actions pending not defeated by repeal of statute," provides (with emphasis added):

> The repeal of a statute hereafter shall not remit, defeat or impair any civil or criminal liability for offenses committed, penalties or forfeitures incurred or rights of action accrued under such statute before the repeal thereof, whether or not in course of prosecution or action at the time of such repeal; but all such offenses, penalties, forfeitures and rights of action created by or founded on such statute, liability wherefore shall have been incurred before the time of such repeal thereof, shall be preserved and remain in force notwithstanding such repeal, unless specially and expressly remitted, abrogated or done away with by the repealing statute. And criminal prosecutions and actions at law or in equity founded upon such repealed statute, whether instituted before or after the repeal thereof, shall not be defeated or

---

[37] Because awarding interest to Lands' End at the statutory rate in Wis. Stat. § 807.01(4) (2013-14) does not have a retroactive effect or impair vested rights, we need not address the rational basis test, see Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 730 (1984); Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976), or Lands' End's argument regarding the balancing of the public interest served by applying the amended law retroactively against the private interests that retroactive application would affect. See Matthies, 244 Wis. 2d 720, ¶27.

impaired by such repeal but shall, notwithstanding such repeal, proceed to judgment in the same manner and to the like purpose and effect as if the repealed statute continued in full force to the time of final judgment thereon, unless the offenses, penalties, forfeitures or rights of action on which such prosecutions or actions shall be founded shall be specially and expressly remitted, abrogated or done away with by such repealing statute.

¶85 Before we discuss Lands' End's arguments regarding Wis. Stat. § 990.04 (2013-14) we observe that the arguments are largely undeveloped. "We do not usually address undeveloped arguments."[38] Nevertheless, Lands' End cited several cases interpreting and applying Wis. Stat. § 990.04 (2013-14). These cases do not support Lands' End's position.

¶86 Specifically, Lands' End relies upon the interpretation of Wis. Stat. § 990.04 in Jackson County Iron Co. v. Musolf, 134 Wis. 2d 95, 104, 396 N.W.2d 323 (1986). The Jackson County court stated: "[I]t is the clear intention of sec. 990.04 to preserve all rights which may have arisen before the repeal of a statute unless such rights are 'specially and expressly remitted, abrogated or done away with by the repealing statute.'" 134 Wis. 2d at 104 (emphasis added) (quoting Niesen v. State, 30 Wis. 2d 490, 493-94, 141 N.W.2d 194 (1966)).

¶87 Jackson County cites Bratton v. Town of Johnson, 76 Wis. 430, 434, 45 N.W. 412 (1890). Bratton discussed the effect of the repeal of statutory remedies, stating, "The repeal of

---

[38] See DOJ v. DWD, 2015 WI 114, ¶33, 365 Wis. 2d 694, 875 N.W.2d 545 (quoting State v. Gracia, 2013 WI 15, ¶28 n.13, 345 Wis. 2d 488, 826 N.W.2d 87) (alteration omitted).

statutes that simply affect the remedy does not defeat or impair any civil liability <u>incurred</u>, or rights of action <u>accrued</u>, under them, . . . unless specially and expressly remitted, abrogated, or done away with by such repealing statute." <u>Bratton</u>, 76 Wis. at 434.

¶88 Lands' End's right to interest did not arise until Lands' End recovered a judgment; this event occurred when Lands' End recovered a judgment after Wis. Stat. § 807.01(4) (2013-14) took effect. As a result, Lands' End's reliance on Wis. Stat. § 990.04 (2013-14) is misplaced.

¶89 This conclusion is reinforced by the court's discussions of the predecessor of Wis. Stat. § 990.04 (2013-14), Wis. Stat. § 370.04 (1953-54), in <u>Waddell v. Mamat</u>, 271 Wis. 176, 181, 72 N.W.2d 763 (1955), and <u>Metropolitan Life Insurance Co. v. Wisconsin Labor Relations Board</u>, 237 Wis. 464, 297 N.W. 430 (1941).

¶90 Both <u>Waddell</u> and <u>Metropolitan Life</u> distinguished between accrued, legally enforceable rights and rights contingent on future events, observing that such contingent rights "could ripen into a right preserved by sec. 370.04 only upon the happening of a further event . . . ." <u>See</u> <u>Waddell</u>, 271 Wis. at 181 (citing <u>Metro. Life Ins. Co. v. Wis. Labor Relations Bd.</u>, 237 Wis. 464, 297 N.W. 430 (1941)). Under <u>Waddell</u> and <u>Metropolitan Life</u>, an unperfected or "inchoate" right, dependent on future events, is not protected by Wis. Stat. § 990.04. <u>See</u> <u>Waddell</u>, 271 Wis. at 181; <u>Metropolitan Life</u>, 237 Wis. at 472.

¶91 Lands' End argues in effect that it has "perfected" or "accrued" a right to the 12 percent statutory rate of interest in Wis. Stat. § 807.01(4) (2009-10) because its remedy under § 807.01(4) (2009-10) was perfected or accrued before Wis. Stat. § 807.01(4) (2013-14) took effect.

¶92 As we have previously explained, however, Lands' End did not have a perfected or accrued (or "vested" or "ripened") right to the 12 percent interest rate before Wis. Stat. § 807.01(4) (2013-14) took effect. Lands' End's right to recover interest under Wis. Stat. § 807.01(4) (2009-10) was inchoate; it was contingent on Lands' End's first obtaining a judgment for as much or more than the amount of its offer of settlement.

¶93 Wisconsin Stat. § 990.04 (2013-14) is thus not implicated in the instant case.

(5)

¶94 Finally, Lands' End argues that if Wis. Stat. § 807.01(4) (2013-14) is applied to Lands' End in the instant case, the Equal Protection clauses of the federal and state constitutions would be violated. A recurring theme in Lands' End's discussion of equal protection (as elsewhere) is that it is being harmed because of the circuit court's error in denying Lands' End's motion for summary judgment (which resulted in Lands' End recovering a judgment after Wis. Stat. § 807.01(4) (2013-14) took effect). We discussed our rejection of this theme in ¶¶62-64, above.

¶95 Our case law takes various approaches to analyzing equal protection challenges. We follow the approach taken by Lands' End.

¶96 Equal protection challenges can be addressed in three steps: (1) does the statute create a distinct class of persons, (2) does the statute treat that class of persons differently from all others similarly situated; and (3) does a rational basis exist for the difference in treatment? See Metro. Assocs. v. City of Milwaukee, 2011 WI 20, ¶23, 332 Wis. 2d 85, 796 N.W.2d 717 (citing Nankin v. Vill. of Shorewood, 2001 WI 92, 245 Wis. 2d 86, 630 N.W.2d 141).

¶97 Lands' End argues that 2011 Wis. Act 69 (enacting Wis. Stat. § 807.01(4) (2013-14)) creates two distinct classes——those who made an offer of settlement and recovered a judgment while Wis. Stat. § 807.01(4) (2009-10) was in effect, and those who made an offer of settlement prior to Act 69 but did not recover a judgment until after the enactment of Wis. Stat. § 807.01(4) (2013-14). Lands' End argues that these classes are treated differently——those in the first class are entitled to interest at a rate of 12 percent under Wis. Stat. § 807.01(4) (2009-10), while those in the second class are entitled to interest at "1 percent plus the prime rate" under Wis. Stat. § 807.01(4) (2013-14).

¶98 In Lands' End's view, because this classification is "irrational or arbitrary," it violates the Equal Protection clauses of the federal and state constitutions. See Metro. Assocs., 332 Wis. 2d 85, ¶61 (quotation omitted).

34

¶99 Because Wis. Stat. § 807.01(4) does not implicate fundamental rights or suspect classifications, we apply the rational basis test in assessing Lands' End's equal protection challenge. See Ferdon ex rel. Petrucelli v. Wis. Patients Comp. Fund, 2005 WI 125, ¶¶64-66, 284 Wis. 2d 573, 701 N.W.2d 440.

¶100 In assessing the rationality of a legislative classification, Lands' End directs us to five criteria:

> (1) All classification[s] must be based upon substantial distinctions which make one class really different from another;
>
> (2) The classification adopted must be germane to the purpose of the law;
>
> (3) The classification must not be based on existing circumstances only. [It must not be so constituted as to preclude addition to the numbers included within the class];
>
> (4) To whatever class a law may apply, it must apply equally to each member thereof;
>
> (5) The characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

Metro. Assocs., 332 Wis. 2d 85, ¶64 (citing Nankin, 245 Wis. 2d 86, ¶39).

¶101 Lands' End argues that if Wis. Stat. § 807.01(4) (2013-14) is applied to those who made offers of settlement while Wis. Stat. § 807.01(4) (2009-10) was in effect, the classification created by the amended version of the statute (2011 Wis. Act 69) fails the first, second, and fifth criteria. We disagree with Lands' End.

¶102 As to the first criterion, Lands' End argues that no real difference exists between the two classes of plaintiffs that Lands' End identified. The argument is that the only real difference between the two classes is that the recovery of judgment was delayed for plaintiffs like Lands' End (in Lands' End's case, because of an erroneous circuit court decision).

¶103 We conclude that the classes identified by Lands' End are substantially distinct from one another. As we explained previously, Lands' End and others who made offers of settlement under Wis. Stat. § 807.01(4) (2009-10) but did not recover a judgment until after § 807.01(4) (2013-14) took effect did not acquire a vested right in the statutory interest rate in effect when they made their offers of settlement.

¶104 Conversely, parties who made offers of settlement and recovered judgments for as much or more than the offer prior to the effective date of Wis. Stat. § 807.01(4) (2013-14) do have vested rights in the 12 percent interest rate, as long as they have met all the requirements to recover interest under Wis. Stat. § 807.01(4) (2009-10). This is a substantial distinction.

¶105 As to the second criterion, Lands' End asserts again that denying 12 percent interest to plaintiffs like Lands' End, for whom recovery of judgment was delayed by a circuit court error, is not germane to the purpose of the statute.

¶106 In evaluating "whether a legislative classification rationally advances the legislative objective, 'we are obligated to locate or, in the alternative, construct a rationale that might have influenced the legislative determination.'" Ferdon,

36

284 Wis. 2d 573, ¶74 (quoting Aicher ex rel. LaBarge v. Wis. Patients Comp. Fund, 2000 WI 98, ¶57, 237 Wis. 2d 99, 613 N.W.2d 849).

¶107 Amending the statute governing interest rates applicable to offers of settlement to reduce the applicable rate of interest to near-market rates for those who recover a judgment after Wis. Stat. § 807.01(4) (2013-14) took effect fulfills various legislative objectives: (1) it ensures that prevailing parties will be compensated fairly and reasonably for being unable to use money to which they are entitled during the pendency of the litigation;[39] and (2) it justly and practicably alleviates the unreasonable burden of imposing liability for interest far above market interest rates on the payor.

¶108 By tying the interest rate in Wis. Stat. § 807.01(4) (2013-14) to market rates, the legislature created a system that is fair to both parties under the circumstance of the instant case. Parties like Lands' End are still compensated at an above-market rate for being unable to use money to which they are "entitled" during the pendency of the litigation, while defendants like the City of Dodgeville still have an incentive to accept reasonable settlement offers.

¶109 Finally, addressing the fifth criterion, Lands' End does not find any distinctions between the classes created by 2011 Wis. Act 69, again arguing that the difference is that the

---

[39] See Upthegrove Hardware, Inc. v. Pa. Lumbermans Ins. Co., 152 Wis. 2d 7, 13, 447 N.W.2d 367 (Ct. App. 1989).

circuit court erred initially and the court of appeals did not reverse the circuit court timely.

¶110 We conclude that, having regard to the public good, the legislature could reasonably conclude that treating parties with vested rights differently from parties who do not have vested rights is rational. Doing otherwise may raise due process questions. See Soc'y Ins., 326 Wis. 2d 444, ¶29.

¶111 Accordingly, we conclude that applying Wis. Stat. § 807.01(4) (2013-14) to those, like Lands' End, who made offers of settlement while Wis. Stat. § 807.01(4) (2009-10) was in effect but who did not recover a judgment until after Wis. Stat. § 807.01(4) (2013-14) took effect does not violate the Equal Protection clauses of the federal and state constitutions.

* * * *

¶112 For the reasons set forth, we affirm the circuit court's judgment and order awarding Lands' End interest at "1 percent plus the prime rate," the rate in the amended version of the statute, Wis. Stat. § 807.01(4) (2013-14), which was in effect when Lands' End recovered its judgment against the City of Dodgeville.

¶113 Awarding interest at "1 percent plus the prime rate" in the instant case is not a retroactive application of Wis. Stat. § 807.01(4) (2013-14) and Lands' End did not have a vested right in the 12 percent interest rate in effect in Wis. Stat. § 807.01(4) (2009-10) at the time Lands' End made its offer of settlement. The circuit court's judgment and order do not violate the Due Process clauses of the federal and state

38

constitutions or Wis. Stat. § 990.04. Moreover, because the legislature had a rational basis for changing the applicable interest rate from 12 percent to "1 percent plus the prime rate" and did not create an irrational or arbitrary classification, awarding interest under Wis. Stat. § 807.01(4) (2013-14) does not violate the Equal Protection clauses of the federal and state constitutions.

¶114 Our decision in the instant case is contrary to the opinion of the court of appeals' in Johnson v. Cintas Corp. No. 2, 2015 WI App 14, 360 Wis. 2d 350, 860 N.W.2d 515. In Johnson, the court of appeals held that applying the amended version of the rate of interest to offers of settlement made prior to the effective date of the amended version would disturb a vested right to interest. Johnson is an officially published opinion of the court of appeals. "Officially published opinions of the court of appeals shall have statewide precedential effect." Wis. Stat. § 752.41(2) (2013-14). We overrule the Johnson decision.

¶115 Accordingly, we affirm the judgment and order of the circuit court in the instant case.

*By the Court.*—The order and judgment of the circuit court is affirmed.

¶116 REBECCA G. BRADLEY, J., did not participate.

39

¶117 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I concur in the lead opinion's conclusion to affirm; I do not join the lead opinion's entire analysis.[1] Although I agree with much of the lead opinion's analysis in this case, I write separately because I fear our jurisprudence on retroactive legislation is in the process of becoming unmoored from fundamental principles of constitutional law and statutory interpretation. For example, while the lead opinion cites specific factors pertinent to the instant case, it fails to anchor those factors to the overriding applicable principles. Therefore, I write to reemphasize the relevant framework when the court analyzes a claim that legislation is retroactive and cannot be applied in a particular case.

¶118 I also write because in retroactive legislation cases, Wisconsin jurisprudence has sometimes muddied the waters, using the concept of rational basis review interchangeably with the concept of a "balancing test."[2] As will be explained, these two

---

[1] I also concur in the lead opinion's decision to overrule Johnson v. Cintas Corp. No. 2, 2015 WI App 14, 360 Wis. 2d 350, 860 N.W.2d 515. See infra ¶¶176 n.15, 177 n.16; lead op., ¶¶7, 116.

[2] Traditionally, a balancing test is a totality-of-the circumstances-type test. See, e.g., State v. Malone, 2004 WI 108, ¶21, 274 Wis. 2d 540, 683 N.W.2d 1 ("Law enforcement action is to be judged against the standard of reasonableness, which in turn 'depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers."' In crafting this balance, this court must carefully scrutinize the totality of the circumstances" (citations omitted).). In contrast, in applying a rational basis test, a court does not, for instance, balance society's expectations; the court simply determines whether the legislature had a rational basis for doing what it did.

concepts could be applied consistently with each other, as long as the balancing test is understood to be a tool to determine whether a statute is rationally related to a legitimate government purpose.[3]

¶119 Wisconsin Stat. § 807.01(4) (2009-10) entitles a party who recovers a judgment greater than or equal to the amount specified in the party's earlier, rejected offer of settlement to obtain interest at an annual rate of 12 percent on the amount recovered from the date of the offer of settlement until the amount is paid. Wis. Stat. § 807.01(4) (2009-10). In 2011 the legislature amended Wis. Stat. § 807.01(4) (2009-10), reducing the applicable interest rate to "1 percent plus the prime rate . . . as reported by the federal reserve board in federal reserve statistical release H. 15." See 2011 Wis. Act 69; Wis. Stat. § 807.01(4) (2013-14).[4]

¶120 Lands' End, Inc. ("Lands' End") has been embroiled in litigation with the City of Dodgeville ("the City") for several

---

[3] We took this case in large part to address the Johnson court's assessment of a due process challenge to the amendments to Wis. Stat. § 807.01(4). The Johnson court applied our due process balancing test and concluded that application of Wis. Stat. § 807.01(4) (2013-14) in that case was unconstitutional. Johnson, 360 Wis. 2d 350, ¶¶27-29. Lands' End, Inc. devotes much of its briefing to its own due process challenge to the amendments to Wis. Stat. § 807.01(4), relying extensively on Johnson.

[4] The statute provides that the applicable prime rate in a given case is the "the prime rate in effect on January 1 of the year in which the judgment is entered if the judgment is entered on or before June 30 of that year or in effect on July 1 of the year in which the judgment is entered if the judgment is entered after June 30 of that year." Wis. Stat. § 807.01(4) (2013-14).

years. Lands' End tendered an offer of settlement to the City prior to the amendments to Wis. Stat. § 807.01(4), but recovered or will recover a judgment greater than the amount specified in that settlement offer after the amendment to § 807.01(4) (2009-10) has taken effect.

¶121 Lands' End insists that it is entitled to the 12 percent interest rate in the pre-2011 version of § 807.01(4), and supports its claim with four arguments.

¶122 First, Lands' End relies on a canon of statutory construction known as the "presumption against retroactivity" to argue that this court should simply interpret Wis. Stat. § 807.01(4) (2013-14) so that the new interest rate does not apply to Lands' End. See generally Antonin Scalia & Bryan A. Garner, Reading Law 261-65 (2012). Next, Lands' End argues that constitutional guarantees prohibit the Wisconsin State Legislature from reducing the interest rate in Wis. Stat. § 807.01(4) (2009-10) and applying that new rate to parties, such as Lands' End, who had made offers of settlement prior to the amendments to that statute. Specifically, Lands' End contends that, because it possesses a "vested" right to the earlier 12 percent interest rate, application to Lands' End of the amendments to § 807.01(4) violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which bars states from depriving persons of life, liberty, or property "without adequate procedures," Arneson v. Jezwinski, 225 Wis. 2d 371, 400, 592 N.W.2d 606 (1999) (citation omitted), and which separately "provides protection from 'certain

3

arbitrary, wrongful government actions,'" State ex rel. Greer v. Wiedenhoeft, 2014 WI 19, ¶57, 353 Wis. 2d 307, 845 N.W.2d 373 (citation omitted). See U.S. Const. amend XIV, § 1.[5] Lands' End also argues that application to it of the amendments to Wis. Stat. § 807.01(4) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, which "is designed to assure that those who are similarly situated will be treated similarly." State v. Smith, 2010 WI 16, ¶15, 323 Wis. 2d 377, 780 N.W.2d 90 (citation omitted). See U.S. Const. amend XIV, § 1.[6]

¶123 Finally, Lands' End claims that application to it of the amendments to § 807.01(4) violates Wis. Stat. § 990.04 (2013-14), which provides in part that the repeal of a statute does not remit, defeat, or impair any civil or criminal liability for offenses committed, penalties or forfeitures

---

[5] Lands' End actually does not appear to specify whether it is bringing a due process claim under the federal constitution, the state constitution, or both. As will be explained, this does not affect the outcome of my analysis. See infra n.6.

[6] Lands' End also brings a claim under the equal protection provision of the Wisconsin Constitution. See Wis. Const. art. 1, § 1; Aicher v. Wis. Patients Compensation Fund, 2000 WI 98, ¶55 & n.14, 237 Wis. 2d 99, 613 N.W.2d 849. As noted, supra n.5, the nature of Lands' End's due process claim is not clear. However, "[t]his court has held the due process and equal protection clauses of the Wisconsin Constitution are the substantial equivalents of their respective clauses in the federal constitution," and Lands' End does not argue that we should interpret the federal and state constitutions differently in this case. State v. Smith, 2010 WI 16, ¶12, 323 Wis. 2d 377, 780 N.W.2d 90. For simplicity, I will therefore refer only to the federal constitution in this writing, as this will equally dispose of any state constitutional claims.

4

incurred, or rights of action accrued prior to the repeal of the repealed statute, unless the legislature expressly states otherwise. See Wis. Stat. § 990.04 (2013-14).

¶124 Each of Lands' End's arguments fail. First, the canon of construction——the presumption against retroactivity——does not apply because under these facts Lands' End has failed to demonstrate that Wis. Stat. § 807.01(4) (2013-14) has retroactive effect. Lands' End's due process claim is based upon the statute having retroactive effect. Because under these facts it does not, Lands' End's due process claim does not warrant discussion.

¶125 Second, Lands' End's right to equal protection under the law is not violated by Wis. Stat. § 807.01(4) (2013-14). Lands' End does not argue, nor does this record support the argument, that this case involves fundamental rights or suspect classes. There is a "reasonable basis" for differentiating between parties which had and which had not obtained judgments prior to enactment of Wis. Stat. § 807.01(4) (2013-14). See Smith, 323 Wis. 2d 377, ¶15.

¶126 Finally, the amendments to Wis. Stat. § 807.01(4) do not "remit, defeat or impair any civil or criminal liability for offenses committed, penalties or forfeitures incurred or rights of action accrued under" Wis. Stat. § 807.01(4) (2009-10), so Wis. Stat. § 990.04 (2013-14) does not apply. Consequently, I would affirm the decision of the circuit court.

## I. THE POLICE POWER OF THE STATES AND THE PRESUMPTION OF CONSTITUTIONALITY

5

¶127 In part, this case focuses on a putative limit on our state legislature: Lands' End argues that, after it made an offer of settlement to the City under Wis. Stat. § 807.01(4) (2009-10), the legislature was powerless to change the interest rate applicable to the amount Lands' End might ultimately recover from the City.  In order to understand more fully any applicable limits on state legislative power, it is appropriate first to review the nature of the power to which such limitations would apply.

> [P]revious to the formation of the new constitution, we were divided into independent states, united for some purposes, but in most respects, sovereign.  These states could exercise almost every legislative power . . . .  When the American people created a national legislature, with certain enumerated powers, it was neither necessary nor proper to define the powers retained by the states.  These powers proceed, not from the people of America, but from the people of the several states; and remain, after the adoption of the constitution, what they were before, except so far as they may be abridged by that instrument.

Sturges v. Crowninshield, 17 U.S. (4 Wheat.) 122, 192-93 (1819) (per Marshall, C.J.).

¶128 Thus, "[i]n our federal system, the National Government possesses only limited powers; the States and the people retain the remainder.  The States have broad authority to enact legislation for the public good——what we have often called a 'police power.'"  Bond v. United States, 572 U.S. __, 134 S. Ct. 2077, 2086 (2014) (citation omitted).  This authority is indeed broad: "it is much easier to perceive and realize the existence and sources of it than to mark its boundaries, or prescribe limits to its exercise."  Slaughter-House Cases, 83

6

U.S. (16 Wall.) 36, 62 (1872) (citation omitted); see also Queenside Hills Realty Co. v. Saxl, 328 U.S. 80, 83 (1946) (police power is "one of the least limitable of governmental powers" (citations omitted).). This is so because the "police power" is simply "the powers of government inherent in every sovereignty to the extent of its dominions." Nebbia v. New York, 291 U.S. 502, 524 (1934) (citation omitted).

¶129 Partial definitions have, however, been attempted. "[T]he police power of a state embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals, or the public safety." Chicago, B. & Q. Ry. Co. v. Illinois, 200 U.S. 561, 592 (1906) (citations omitted); see also Slaughter-House Cases, 83 U.S. at 62 (police power "extends . . . to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the State" (citation omitted).).

¶130 All of this is not to say that the police power is unlimited; it is of course subject to constitutional restrictions. See, e.g., Lambert v. California, 355 U.S. 225, 228 (1957); Panhandle E. Pipe Line Co. v. State Highway Comm'n of Kansas, 294 U.S. 613, 619 (1935); Nebbia, 291 U.S. at 524-25. But this court must always be hesitant to exercise its own power to declare that the legislature has exceeded its authority.

> [The legislature] is supreme in all cases where it is not restrained by the constitution; and as it is the duty of legislators as well as judges to consult this and conform their acts to it, so it should be presumed that all their acts do conform to it unless the

7

contrary is manifest. This confidence is necessary to insure due obedience to its authority. If this be frequently questioned, it must tend to diminish the reverence for the laws which is essential to the public safety and happiness. . . . The interference of the judiciary with legislative Acts, if frequent or on dubious grounds, might occasion so great a jealousy of this power and so general a prejudice against it as to lead to measures ending in the total overthrow of the independence of the judges, and so of the best preservative of the constitution. The validity of the law ought not then to be questioned unless it is so obviously repugnant to the constitution that when pointed out by the judges, all men of sense and reflection in the community may perceive the repugnancy. By such a cautious exercise of this judicial check, no jealousy of it will be excited, the public confidence in it will be promoted, and its salutary effects be justly and fully appreciated.

James B. Thayer, The Origin and Scope of the American Doctrine of Constitutional Law, 7 Harv. L. Rev. 129, 142 (1893) (quoting Byrne's Adm'rs v. Stewart's Adm'rs, 3 S.C. Eq. 466, 476-77 (3 Des. 466) (S.C. App. Eq. 1812)). Fittingly, then, this court "has often affirmed the well-established presumption of constitutionality that attaches itself to all legislative acts." State ex rel. Hammermill Paper Co. v. La Plante, 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973). In fact, we require litigants challenging the constitutionality of a statute to establish the statute's unconstitutionality "beyond a reasonable doubt." Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶76, 358 Wis. 2d 1, 851 N.W.2d 337. We must view with skepticism any claim that the legislature has violated the federal or state constitutions.

## II. RETROACTIVE LEGISLATION AND THE PRESUMPTION AGAINST RETROACTIVITY

8

¶131 This case requires the court to determine whether Wis. Stat. § 807.01(4) (2013-14) is retroactive in effect. Generally speaking, a retroactive law is "a legislative act that looks backward or contemplates the past, affecting acts or facts that existed before the act came into effect." Retroactive law, Black's Law Dictionary 1511 (10th ed. 2014). On the other hand, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." Landgraf v. USI Film Products, 511 U.S. 244, 269 (1994) (citation omitted).[7] Additionally, "a statute 'is not made retroactive merely because it draws upon antecedent facts for its operation.'" Id. at 269 n.24 (citation omitted).

¶132 Determining whether a statute has retroactive effect "demands a commonsense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.'" Martin v. Hadix, 527 U.S. 343, 357-58 (1999) (citation omitted).

> The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to

---

[7] Although the words "retroactive" and "retrospective" technically possess distinct meanings, see, e.g., 16B Am. Jur. 2d Constitutional Law § 735, the terms "are synonymous in judicial usage and may be employed interchangeably." 2 Sutherland Statutory Construction § 41:1 (7th ed.). See also Landgraf v. USI Film Products, 511 U.S. 244, 269 n.23 (1994).

9

classify the enormous variety of legal changes with perfect philosophical clarity. However, retroactivity is a matter on which judges tend to have "sound . . . instinct[s]," see Danforth v. Groton Water Co., 178 Mass. 472, 476, 59 N.E. 1033, 1034 (1901) (Holmes, J.), and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

Landgraf, 511 U.S. at 269.

¶133 State statutes are not unconstitutional simply because they apply retroactively. League v. Texas, 184 U.S. 156, 161 (1902). "That there exists a general power in the state governments to enact retrospective or retroactive laws, is a point too well settled to admit of question at this day." Id. (internal quotation marks omitted) (citation omitted). "Absent a violation of one of [the Constitution's] specific provisions, the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." Landgraf, 511 U.S. at 267.

¶134 At the same time, "[t]he principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal" and "has long been a solid foundation of American law." Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 855 (1990) (Scalia, J, concurring). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." Landgraf, 511 U.S. at 265. Thus,

> [t]he presumption is very strong that a statute was
> not meant to act retrospectively, and it ought never
> to receive such a construction if it is susceptible of

10

any other. It ought not to receive such a construction unless the words used are so clear, strong and imperative that no other meaning can be annexed to them or unless the intention of the legislature cannot be otherwise satisfied.

U.S. Fid. & Guar. Co v. United States, 209 U.S. 306, 314 (1908) (citations omitted). In sum, this "presumption against retroactivity" is a "guide to interpretation, not a constitutional imperative, because the presumption applies even when the Constitution does not forbid retroactivity." Antonin Scalia & Bryan A. Garner, supra at 261.

¶135 Given the foregoing, analysis in cases involving potentially-retroactive legislation follows a three-step process: (1) the court determines whether the legislature has "expressly prescribed the statute's proper reach," because if it has done so, "there is no need to resort to judicial default rules" and the statute is applied as written;[8] (2) if it is unclear whether the statute is meant to apply retroactively, the court "must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed"; and (3) if the court concludes the statute would indeed have a retroactive effect, the presumption against retroactivity is applied and the statute is not applied

---

[8] "[I]n the absence of language as helpful as [an express prescription,] [the court] tr[ies] to draw a comparably firm conclusion about the temporal reach specifically intended by applying '[its] normal rules of construction.'" Fernandez-Vargas v. Gonzales, 548 U.S. 30, 37 (2006) (citation omitted).

11

retroactively. Landgraf, 511 U.S. at 280; see also Fernandez-Vargas v. Gonzales, 548 U.S. 30, 37 (2006).

¶136 Much litigation revolves around part two of this three-part test: resolving the question of whether a particular enactment applies retroactively. See e.g., Vartelas v. Holder, 566 U.S. ___, 132 S. Ct. 1479, 1483-84 (2012). It is in the resolution of these types of questions that certain other legal issues become relevant, such as whether a statute is procedural or substantive and whether application of the statute would upset "vested rights." See, e.g., Landgraf, 511 U.S. at 273-75.[9] It is worth dwelling on this latter point for a moment.

---

[9] The Supreme Court has stated that "[e]ven absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations." Landgraf, 511 U.S. at 273. First, "[w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." Id. Second, the Supreme Court has

> regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed. . . . Present law normally governs in such situations because jurisdictional statutes "speak to the power of the court rather than to the rights or obligations of the parties."

Id. at 274 (citation omitted). Third,

> [c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity. . . . Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive.

Id. at 275 (citation omitted).

¶137 The Supreme Court has at least implicitly characterized a "vested right" as "an immediate fixed right of present or future enjoyment." Fernandez-Vargas, 548 U.S. at 44 n.10 (quoting Pearsall v. Great N. Ry. Co., 161 U.S. 646, 673 (1896)).

> [R]ights are vested, in contradistinction to being expectant or contingent. They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons, as a present interest. They are expectant when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting.

Pearsall, 161 U.S. at 673 (internal quotation marks omitted) (citation omitted).

¶138 The concept of vested rights is at issue in this case because "every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective." Landgraf, 511 U.S. at 269 (quoting Society for Propagation of the Gospel v. Wheeler, 22 F. Cas. 756, 767 (C.C.N.H. 1814) (No. 13,156) (Story, Circuit Justice) (emphases added)).

¶139 Thus, in cases involving retroactive legislation, courts may examine whether a party has a "vested right" that would be impaired by application of a statute in order to "determine whether application of the statute[] in question to the party challenging the statute actually has a retroactive

13

effect." Society Ins. v. LIRC, 2010 WI 68, ¶29, 326 Wis. 2d 444, 786 N.W.2d 385; see also Barbara B. v. Dorian H., 2005 WI 6, ¶20, 277 Wis. 2d 378, 690 N.W.2d 849; Matthies v. Positive Safety Mfg. Co., 2001 WI 82, ¶¶19, 23, 244 Wis. 2d 720, 628 N.W.2d 842.[10] If a statute has retroactive effect, the presumption against retroactivity becomes relevant. Landgraf, 511 U.S. at 280.

¶140 But, again, when the legislature unambiguously establishes that a law applies to conduct which has already occurred, the presumption against retroactivity is no longer relevant; courts must simply apply the words of the legislature——even if the statute has retroactive effect——unless they violate some constitutional stricture. See id. at 267, 273 ("[W]e have recognized that, in many situations, a court should

---

[10] This application of the vested rights concept should not be confused with statements in some of our earlier cases that "[a] legislature may not constitutionally enact a law which impairs vested rights acquired under prior law, nor may it 'enact retrospective laws creating new obligations with respect to past transactions.'" State ex rel. Briggs & Stratton Corp. v. Noll, 100 Wis. 2d 650, 656, 302 N.W.2d 487 (1981) (citation omitted), overruled by Neiman v. Am. Nat. Prop. & Cas. Co., 2000 WI 83, 236 Wis. 2d 411, 613 N.W.2d 160. We have since changed course, explaining that "[t]o the extent the language in prior holdings implies that identifying a 'vested' right is dispositive in determining whether a clearly retroactive statute is constitutional, that language is overruled." Neiman, 236 Wis. 2d 411, ¶14.

I note that many prior cases of the Supreme Court in the field of retroactive legislation were determined "during an era characterized by exacting review of economic legislation under an approach that 'has long since been discarded.'" United States v. Carlton, 512 U.S. 26, 34 (1994) (citation omitted).

'apply the law in effect at the time it renders its decision,' even though that law was enacted after the events that gave rise to the suit. There is, of course, no conflict between that principle and a presumption against retroactivity when the statute in question is unambiguous" (citation omitted) (emphasis removed).); U. S. Fidelity, 209 U.S. at 314.

¶141 This takes us to the final general consideration in cases involving retroactive legislation: what the Constitution has to say about legislation that is clearly retroactive in effect. The Supreme Court of the United States addressed this precise topic earlier this year:

> [T]he restrictions that the Constitution places on retroactive legislation "are of limited scope":
>
>> The Ex Post Facto Clause flatly prohibits retroactive application of penal legislation. Article I, § 10, cl. 1, prohibits States from passing . . . laws "impairing the Obligation of Contracts." The Fifth Amendment's Takings Clause prevents the Legislature (and other government actors) from depriving private persons of vested property rights except for a "public use" and upon payment of "just compensation." The prohibitions on "Bills of Attainder" in Art. I, §§ 9-10, prohibit legislatures from singling out disfavored persons and meting out summary punishment for past conduct. The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause "may not suffice" to warrant its retroactive application.
>
> "Absent a violation of one of those specific provisions," when a new law makes clear that it is retroactive, the arguable "unfairness of retroactive

15

civil legislation is not a sufficient reason for a court to fail to give [that law] its intended scope."

Bank Markazi v. Peterson, 578 U.S. ___, 136 S. Ct. 1310, 1324-25 (2016) (quoting Landgraf, 511 U.S. at 266-68).

¶142 The current case features due process and equal protection challenges to the putatively retroactive application of Wis. Stat. § 807.01(4) (2013-14). Because of certain misapprehensions in the proceedings before this court and in the proceedings that occurred in a similar case involving the same basic issues, namely Johnson, I will next discuss the applicable framework for analysis of these claims.

III. DUE PROCESS CHALLENGES TO RETROACTIVE LEGISLATION

¶143 The Fourteenth Amendment to the federal constitution provides in part that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

¶144 The Due Process Clause "imposes procedural limitations on a State's power to take away protected entitlements." District Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 67 (2009) (emphasis added) (citation omitted). Thus, for instance, the amendment requires "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).

¶145 The Due Process Clause has also been interpreted to possess a "substantive component . . . that protects individual liberty against 'certain government actions regardless of the

16

fairness of the procedures used to implement them.'" Collins v. Harker Heights, Tex., 503 U.S. 115, 125 (1992) (emphases added) (citation omitted).

¶146 Lands' End is not, apparently, arguing that the procedures by which the State has (putatively) deprived it of life, liberty or property——here, the enactment of a law by the legislative and executive branches of our state government——were constitutionally inadequate. Cf. Missouri v. Jenkins, 495 U.S. 33, 66 (1990) (Kennedy, J., concurring in part and concurring in the judgment) ("[C]itizens who are taxed [by a legislature] are given notice and a hearing through their representatives, whose power is a direct manifestation of the citizens' consent."); Atkins v. Parker, 472 U.S. 115, 129-30 (1985) ("[A] welfare recipient is not deprived of due process when the legislature adjusts benefit levels . . . . [T]he legislative determination provides all the process that is due" (citation omitted).).

¶147 Instead, Lands' End contends that the federal constitution prohibits the legislature from taking the type of action that it did regardless of any procedural protections; that is, Lands' End argues that application to it of the amendments to Wis. Stat. § 807.01(4) is unconstitutional no matter how the alleged deprivation is implemented. This is a substantive due process claim. See Barbara B., 277 Wis. 2d 378, ¶18 n.14 ("[Petitioner] is not arguing that the procedure applied in his case was unfair. Instead, he is arguing that it is unfair to apply [the statute] retroactively because he

17

believes that it is wrong to apply those substantive rules to his case in light of the law that he alleges had previously been in place. Thus, it appears that [petitioner] is asserting a substantive due process claim, rather than a procedural due process claim" (citation omitted).); United States v. Carlton, 512 U.S. 26, 39-42 (1994) (Scalia, J., concurring) (framing retroactive tax legislation case as one involving substantive due process); Pension Ben. Guar. Corp. v. R. A. Gray & Co., 467 U.S. 717, 731-32 (1984) ("We have doubts . . . that retroactive application of the [statute] would be invalid under the Due Process Clause for lack of notice even if it was suddenly enacted by Congress without any period of deliberate consideration, as often occurs with floor amendments or 'riders' added at the last minute to pending legislation."); James L. Kainen, The Historical Framework for Reviving Constitutional Protection for Property and Contract Rights, 79 Cornell L. Rev. 87, 112 (1993) ("Questions of retroactive law are essentially questions of substantive due process . . ." (citation omitted).); cf. Reno v. Flores, 507 U.S. 292, 302 (1993) (substantive due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.").

¶148 The federal constitution's guarantee of "substantive" due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksberg, 521 U.S. 702, 719-20

18

(1997) (citation omitted). The United States Supreme Court has determined that these rights include, for example, the rights to have children and to direct the education and upbringing of one's children. Id. at 720. If a fundamental liberty interest is identified, any infringement on it by the government must be "narrowly tailored to serve a compelling state interest." Flores, 507 U.S. at 302. If fundamental rights and liberties are not at stake, however, the federal constitution requires only that a challenged law "be rationally related to legitimate government interests," Glucksberg, 521 U.S. at 728——that is, neither "arbitrary" nor "irrational." Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976); see also Smith, 323 Wis. 2d 377, ¶12; Flores, 507 U.S. at 305.

¶149 For example, the Supreme Court has determined that, unlike statutes pertaining to fundamental rights, "legislative Acts adjusting the burdens and benefits of economic life" are subject only to the "arbitrary and irrational" standard of review. Pension Ben. Guar. Corp., 467 U.S. at 729; Usery, 428 U.S. at 15.

¶150 Lands' End does not argue that a fundamental right or liberty is at stake. Instead, it claims that Wis. Stat. § 807.01(4) (2013-14) unconstitutionally impairs its "vested" right in the 12 percent interest rate provided under Wis. Stat. § 807.01(4) (2009-10). The idea behind Lands' End's argument is that, as it relied on the 12 percent interest rate in effect when it made its offer of settlement to the City of Dodgeville, the legislature may not apply a lower interest rate in Lands'

19

End's case now that Lands' End has obtained a judgment in its favor above the amount of its earlier settlement offer. To do so, the argument presumably runs, would be to "deprive [Lands' End] of . . . property, without due process of law." U.S. Const. amend. XIV, § 1; see also Pearsall, 161 U.S. at 673 ("[Rights] are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons, as a present interest" (citation omitted).); Society Ins., 326 Wis. 2d 444, ¶30 (referring to "vested property right[s]" in case involving due process challenge to retroactive legislation).

¶151 As stated, there is no contention that the present case involves fundamental rights or interests. Thus, we would expect that even if Lands' End could be said to possess a vested property right in a 12 percent interest rate on the judgment it recovered, explicit abrogation of that right by the legislature would be subject to rational basis review. And in fact, this is exactly what relevant case law provides. The Supreme Court has stated:

> Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches:
>
> > [O]ur cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. This is true even though the effect of the legislation is to impose a new duty or liability based on past acts.

> To be sure, we [have] recognize[d] that retroactive legislation does have to meet a burden not faced by legislation that has only future effects. "It does not follow . . . that what Congress can legislate prospectively it can legislate retrospectively. The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former." But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.

Pension Ben. Guar. Corp., 467 U.S. at 729-30 (citations omitted).

¶152 Similarly, in Society Insurance we emphasized that, unlike in cases involving challenges based on the contract clauses of the federal and state constitutions, "we review a due process challenge to retroactive legislation under a rational basis review." Society Ins., 326 Wis. 2d 444, ¶30 n.12 (citation omitted). We made clear: "[R]equiring a showing of a 'significant and legitimate public purpose' in the course of a due process challenge improperly subjects the retroactive legislation to a heightened level of scrutiny. Retroactive legislation must be 'justified by a rational legislative purpose.'" Id. (citing Pension Ben. Guar. Corp., 467 U.S. at 730).[11]

¶153 Unfortunately, despite the fact that rational basis review generally requires only that the law under review be "rationally related to a legitimate legislative purpose,"

---

[11] As will be discussed below, the Johnson court erroneously stated that the "significant and legitimate" standard was applicable to a due process challenge to retroactive legislation. Johnson, 360 Wis. 2d 350, ¶15.

21

Carlton, 512 U.S. at 35——a test that can be employed with minimum worry about judicial subjectivity——a less defensible and extremely subjective "balancing test" has wormed its way into our case law. In Matthies, for instance, we stated, "Whether there exists a rational basis [in retroactive legislation cases] involves weighing the public interest served by retroactively applying the statute against the private interest that retroactive application of the statute would affect." Matthies, 244 Wis. 2d 720, ¶27.

¶154 The validity of this balancing test is questionable, as becomes apparent when one traces the test's genesis. The test seemingly appeared in Wisconsin law in our decision in Martin v. Richards, 192 Wis. 2d 156, 201, 531 N.W.2d 70 (1995).

¶155 The Martin court, in turn, lifted the balancing test from a First Circuit case, Adams Nursing Home of Williamstown, Inc. v. Mathews, 548 F.2d 1077 (1st Cir. 1977). Martin, 192 Wis. 2d at 201. Adams Nursing Home was decided prior to relevant Supreme Court case law on the topic, such as Pension Benefit, see supra, ¶151, and cited, for its own principle authority, a then-17-year-old law review article. See Adams Nursing Home, 548 F.2d at 1080 (citations omitted). The author of the article states:

> [W]hen one considers the great variety of [the Supreme Court's retroactive legislation] cases, it becomes clear that no one factor is sufficient to explain the results which the Court has reached. Rather it is submitted that the constitutionality of such a statute is determined by three major factors, each of which must be weighed in any particular case.

22

Charles B. Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692, 696-97 (1960).[12]

---

[12] The Adams Nursing Home court also cited, as indirect authority for its balancing test, Usery v. Turner Elkhorn Mining Co., 428 U.S. 1 (1976), and S. Terminal Corp. v. E.P.A., 504 F.2d 646, 680 (1st Cir. 1974). Adams Nursing Home of Williamstown, Inc. v. Mathews, 548 F.2d 1077, 1080-81 (1st Cir. 1977) (citations omitted). Neither provides strong support for the balancing test currently employed in this court's vested rights jurisprudence. The discussion in South Terminal cited by the Adams Nursing Home court, for example, involves a Contracts Clause challenge. S. Terminal, 504 F.2d at 680. Usery does not explicitly discuss a balancing test and suggests that rationality is the important yardstick. See Usery, 428 U.S. at 15, 19 ("It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way."). In any event, Usery was published prior in time to Pension Benefit Guaranty Corp. v. R. A. Gray & Co., 467 U.S. 717 (1984).

The Martin court also provided by way of footnote certain "examples of decisions" using the balancing test, namely Usery, Chappy v. LIRC, 136 Wis. 2d 172, 192-94, 401 N.W.2d 568 (1987), and State ex rel. Briggs & Stratton v. Noll, 100 Wis. 2d 650, 656-58, 302 N.W.2d 487 (1981), overruled by Neiman v. American National Prop. & Cas. Co., 2000 WI 83, 236 Wis. 2d 411, 613 N.W.2d 160, but these latter two cases are no more convincing. Martin v. Richards, 192 Wis. 2d 156, 201 n.8, 531 N.W.2d 70 (1995) (citations omitted). Chappy applies the rational basis test and does not discuss any balancing test. See Chappy, 136 Wis. 2d at 192. Noll in fact stated that any retrospective law that impairs vested rights acquired under prior law is unconstitutional, and was overruled in that respect by this court's decision in Neiman. Noll, 100 Wis. 2d at 656, overruled by Neiman, 236 Wis. 2d 411, ¶14.

(continued)

¶156 That the balancing test used by this court in retroactive legislation cases has a questionable pedigree might not be so problematic were it not for the fact that it is illogical to suggest that a legislative goal is simply irrational whenever "the private interest that retroactive application of [a] statute would affect" is adjudged to be "weigh[tier]"——even if by only a hair——than "the public interest served by retroactively applying the statute." Matthies, 244 Wis. 2d 720, ¶27. Such a judgment itself recognizes that there is some (rational) "public interest" served by retroactively applying the statute. In cases where the public and private interests are both "weighty," it would be incredibly difficult to apply the test objectively.

¶157 Simply stated, the proper test to be applied is the rational basis test. To the extent that the court has previously engaged in the balancing test to determine whether a rational basis exists for retroactive application of a statute, we should recognize that it is really not a balancing test at all. At most, a statute might be found not to be rationally

---

Martin's decision to adopt use of a balancing test is perplexing; it even refers to both Usery and Pension Benefit in the paragraph immediately preceding its citation to Adams Nursing Home. As discussed, Pension Benefit (and Usery, for that matter) makes clear that retroactive application of a statute need only be "supported by a legitimate legislative purpose furthered by rational means" to survive due process challenge. Pension Ben. Guar. Corp., 467 U.S. at 729. Martin neglected to cite this portion of Pension Benefit. The word "rational" appears only once in Martin, in an unrelated context. Martin, 192 Wis. 2d at 173.

based or to be "irrational" pursuant to the court's due process "balancing test" only if there were virtually no conceivable public interest served by retroactive application of the legislation under review. The rational basis test is not whether, on balance, a private interest outweighs the public interest. The rational basis test is not simply picking whether the interests of one group are more important than the other. Those are legislative determinations that are not subject to this court's balancing. See, e.g., Smith, 323 Wis. 2d 377, ¶17 (citing Supreme Court's characterization of rational basis review as "a paradigm of judicial restraint" in FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 314 (1993)); Flynn v. DOA, 216 Wis. 2d 521, 539, 576 N.W.2d 245 (1998) ("This court has long held that it is the province of the legislature, not the courts, to determine public policy."). That is the only way to reconcile (1) our due process requirement that retroactive legislation need only be justified by a rational legislative purpose; with (2) our due process requirement that the public interest served by retroactive application of a statute outweigh the private interest affected by retroactive application of a statute. See Society Ins., 326 Wis. 2d 444, ¶¶30, 53. There may be an implicit recognition of the relevant analysis not being a balancing test but instead being a straightforward application of the rational basis test in certain of our cases. See, e.g. Martin, 192 Wis. 2d at 211 ("[T]he record reveals minimal, if any, public interest served by applying the cap on noneconomic damages retroactively" (emphasis added).); Matthies,

25

244 Wis. 2d 756, ¶47 ("[T]he substantial impairment of Matthies' right to recovery significantly outweighs the public interest, if any, served by retroactive application of [Wis. Stat.] § 895.045(1)" (emphasis added).).

¶158 There also seems to be implicit recognition of this fact in Supreme Court case law. In Pension Benefit, the Supreme Court acknowledged a four-part test applied by the Seventh Circuit "for reviewing the constitutionality of retroactive legislation under the Fifth Amendment's Due Process Clause." Pension Ben. Guar. Corp., 467 U.S. at 727 & n.6. One part of that test required consideration of "the equities of imposing the legislative burdens." Id. at 727. The Court stated, "We . . . reject the constitutional underpinnings of the analysis employed by the Court of Appeals . . . , although we have no occasion to consider whether the factors mentioned by that court might in some circumstances be relevant in determining whether retroactive legislation is rational." Id. at 727 n.6 (emphases added). The Supreme Court thus clarified that the paramount constitutional question in cases involving retroactive legislation is the statute's rationality. See also Pension Ben. Guar. Corp., 467 U.S. at 733 ("[A]lthough we have noted that retrospective civil legislation may offend due process if it is 'particularly "harsh and oppressive,"' that standard does not differ from the prohibition against arbitrary and irrational legislation that we clearly enunciated in [Usery]" (citations omitted).).

¶159 It is not as though the Supreme Court has always categorically ignored consideration of the relative equities in conducting due process analyses of retroactive legislation. See, e.g., Usery, 428 U.S. at 18 (discussing plaintiffs' arguments that retroactive liability would be unfair). Ultimately, however, any application of a non-constitutional balancing test must at most be in service of determination of the question of a statute's rationality. See id. at 19 (rejecting unfairness arguments and stating, "It is enough to say that the Act approaches the problem of cost spreading rationally; whether a broader cost-spreading scheme would have been wiser or more practical under the circumstances is not a question of constitutional dimension" (citation omitted) (emphasis added).).

¶160 Thus, while I would not necessarily foreclose consideration of the relative equities, a mere balancing of the relative equities is not the test. "Statutes may be invalidated on due process grounds only under the most egregious of circumstances." E. Enters. v. Apfel, 524 U.S. 498, 550 (1998) (Kennedy, J., concurring in the judgment and dissenting in part). Consequently, to the extent that there is any balancing employed in the context of retroactive legislation, the question asked under the rational basis test must be whether "the private interest that retroactive application of the statute would affect" is so much "weigh[tier]" than "the public interest served by retroactively applying the statute," Matthies, 244 Wis. 2d 720, ¶27, that the statute could only be characterized

27

as "arbitrary or irrational." Smith, 323 Wis. 2d 377, ¶11. Quite obviously, this "arbitrary or irrational" determination is likely in only the rarest of cases, where essentially no genuine public interest can be said to exist. See also The American Heritage Dictionary of the English Language 94 (3d ed. 1992) (defining "arbitrary" in part as follows: "1. Determined by chance, whim, or impulse, and not by necessity, reason, or principle . . . 2. Based on or subject to individual judgment or preference.").

¶161 Rationality may seem a low bar. And, indeed, the Supreme Court has repeatedly determined that it is, in upholding retroactive legislation against due process challenges. See, e.g., Pension Ben. Guar. Corp., 467 U.S. at 725 (retroactive application of statute requiring employers withdrawing from a multiemployer pension plan to "pay a fixed and certain debt to the pension plan," such that certain employer withdrawing from the plan prior to enactment of the statute was liable in amount of $201,359, held constitutional); Usery, 428 U.S. at 5-6, 14, 19-20 (retroactive application of statute requiring coal mine operators to compensate miners disabled by black lung disease, such that certain operators were obligated to compensate miners who had already left employment prior to enactment of the statute, held constitutional); Cf. Carlton, 512 U.S. at 28-29, 35 (retroactive application of statute treating earlier, newly-established estate tax deduction as available only to certain estates, such that estate which spent $631,000 in order to use

28

deduction to reduce estate tax by $2,501,161 before enactment of the statute could not use deduction, held constitutional).

¶162 On the other hand, there is nothing particularly surprising about the fact that precedent requires that the constitutional guarantee of "substantive due process" provides only modest protection in cases not involving fundamental rights. See, e.g., Flores, 507 U.S. at 302-03. Additionally, and importantly, to say that the due process clause does not prohibit application of retroactive legislation does not mean that such legislation automatically survives attack based on other constitutional provisions. See, e.g., E. Enters., 524 U.S. at 522, 532-37 (plurality) (retroactive statute effected an unconstitutional taking in violation of Fifth Amendment Takings Clause).

IV. EQUAL PROTECTION CHALLENGES TO RETROACTIVE LEGISLATION

¶163 As discussed, a due process challenge to retroactive legislation is somewhat different than a due process challenge to prospective legislation. "It does not follow . . . that what Congress can legislate prospectively it can legislate retrospectively. The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former." Pension Ben. Guar. Corp., 467 U.S. at 730 (citation omitted). In contrast, an equal protection challenge to retroactive legislation cases seemingly would be remarkably similar, if not identical to such challenges in cases involving only prospective legislation: in both types of cases, courts

29

must examine the legislature's classifications under the appropriate standard of review. See, e.g., Smith, 323 Wis. 2d 377, ¶¶12-13, 15-17. Thus, in summarizing the various restrictions that the Constitution places on retroactive legislation in Bank Markazi, see supra ¶141, the Supreme Court makes no mention of the Equal Protection Clause of the Fourteenth Amendment. See Bank Markazi, 136 S. Ct. at 1324-25 (citation omitted). This is likely not because the Equal Protection Clause provides no protection in this area of law, but because it provides no special protection in this area of the law. In both types of cases——those involving prospective application of a law and those involving retroactive application of a law——courts must determine whether the legislature has complied with the "general rule that States must treat like cases alike but may treat unlike cases accordingly." Vacco v. Quill, 521 U.S. 793, 799 (1997) (citation omitted).[13]

¶164 Lands' End argues that application to it of Wis. Stat. § 807.01(4) (2013-14) denies it the equal protection of the laws because it "treat[s] differently, without rational basis, the class of plaintiffs who commenced actions, made offers of settlement, and obtained a final judgment prior to the passage of Act 69 from those obtaining [judgment] after the passage of Act 69."

---

[13] At the very least, the parties have not suggested that the equal protection analysis conducted in the context of retroactive legislation is different than that conducted in the context of prospective legislation.

30

¶165 Because Lands' End does not argue that a fundamental right or suspect class is at issue, rational basis review is the level of judicial scrutiny applicable to Lands' End's equal protection challenge to Wis. Stat. § 807.01(4) (2013-14). See United States v. Sperry Corp., 493 U.S. 52, 65 (1989); State v. Alger, 2015 WI 3, ¶39, 360 Wis. 2d 193, 858 N.W.2d 346. Legislation is upheld under rational basis review "unless it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest." Alger, 360 Wis. 2d 193, ¶39 (citation omitted).

¶166 With the relevant principles and analytical frameworks in place, I proceed to analyze Lands' End's claims. I note that my remaining analysis largely tracks the analysis presented in the lead opinion.

### V. WHETHER WIS. STAT. § 807.01(4) (2013-14) APPLIES RETROACTIVELY

¶167 Wisconsin Stat. § 807.01(4) (2013-14) states:

> If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at an annual rate equal to 1 percent plus the prime rate in effect on January 1 of the year in which the judgment is entered if the judgment is entered on or before June 30 of that year or in effect on July 1 of the year in which the judgment is entered if the judgment is entered after June 30 of that year, as reported by the federal reserve board in federal reserve statistical release H. 15, on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04 (4) and 815.05 (8).

Wis. Stat. § 807.01(4) (2013-14).

31

¶168 Consistent with the above discussion, the first step in analyzing Lands' End's claims against Wis. Stat. § 807.01(4) (2013-14) is to determine whether the legislature has "expressly prescribed the statute's proper reach," because if it has done so, the statute is applied as written and the presumption against retroactivity is ignored. Landgraf, 511 U.S. at 280. As the lead opinion explains, it is simply not clear whether Wis. Stat. § 807.01(4) (2013-14) applies to conduct preceding the statute's enactment. Lead op., ¶46.

¶169 2011 Wis. Act 69 does contain an "Initial Applicability" section, see 2011 Wis. Act 69, § 4, but it is unhelpful here. The section states, "This act first applies to an execution on a judgment entered on the effective date of this subsection." Id. A federal court has interpreted this language "to mean that the applicable interest rate is determined by the date judgment is entered." James Michael Leasing Co. v. Paccar, Inc., No. 11-C-0747, 2013 WL 5771156, at *2 (E.D. Wis. Oct. 24, 2013), aff'd, 772 F.3d 815 (7th Cir. 2014). However, while the legislature could have written, "This act first applies to a judgment entered on the effective date of this statute," it did not do so. Lands' End contends, and the City does not dispute this fact, that it will never obtain execution on a judgment in this case. See, e.g., Wis. Stat. § 815.02 (2013-14) ("A judgment which requires the payment of money or the delivery of property may be enforced in those respects by execution."). The effect of the initial applicability section of 2011 Wis. Act 69 on this case is, at best, unclear.

32

¶170 Further, Wis. Stat. § 807.01(4) (2013-14) itself contains no indication regarding the "temporal reach" of the statute. Fernandez-Vargas, 548 U.S. at 37; see Wis. Stat. § 807.01(4) (2013-14).

¶171 Thus, Wis. Stat. § 807.01(4) (2013-14) must be assessed in order to ascertain whether it has retroactive effect; if it does, the presumption against retroactivity is applied because the statute does not otherwise indicate its temporal reach. Landgraf, 511 U.S. at 270. I agree with the lead opinion that Wis. Stat. § 807.01(4) (2013-14) does not have retroactive effect. See lead op., ¶82.

¶172 Lands' End argues that application of Wis. Stat. § 807.01(4) (2013-14) to it would disturb its vested right. But both the original and the amended versions of Wis. Stat. § 807.01(4) require both an unaccepted offer of settlement and recovery of a judgment greater than or equal to the amount specified in the offer of settlement in order for a particular interest rate to be applied. Lands' End only fulfilled one of these requirements before the statute was amended.

¶173 At the time that Lands' End made an offer of settlement to the City, it had no "vested" right to anything—it had no "immediate fixed right of present or future enjoyment." See Fernandez-Vargas, 548 U.S. at 44 n.10. It could not have enforced a claim to 12 percent interest; any court would have required recovery of a judgment greater than or equal to the amount contained in the offer of settlement. Lands' End instead possessed a contingent right. Rights are contingent, as opposed

33

to vested, "when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting." Pearsall, 161 U.S. at 673 (citation omitted). When Lands' End made an offer of settlement to the City, it was possible that Lands' End might go on to recover a judgment. Alternately, it was possible that "some other event [could] prevent [the] vesting" of its contingent right to 12 percent interest——for instance, Lands' End might have lost the case, or the City might have accepted its settlement offer, or Lands' End might have won the case but recovered a judgment less than the amount contained in its earlier offer of settlement. The fact that the legislature changed the applicable interest rate prior to the vesting of Lands' End's contingent right might seem unfair, but it is not a retroactive application of a new law. "[A] statute 'is not made retroactive merely because it draws upon antecedent facts for its operation.'" Landgraf, 511 U.S. at 269 n.24.

¶174 The argument that Lands' End's right to a 12 percent interest rate is vested because that rate was in effect when it calculated an appropriate offer of settlement ignores the fact that Lands' End could have factored into its calculation the possibility that the interest rate might change. Cf. Carlton, 512 U.S. at 34 (stating, in regard to due process challenge to retroactive tax legislation, "we do not consider respondent Carlton's lack of notice regarding the 1987 amendment to be dispositive. . . . [A] taxpayer 'should be regarded as taking his chances of any increase in the tax burden which might result

34

from carrying out the established policy of taxation'" (citation omitted).). Besides, "[a] statute does not operate 'retrospectively' merely because it . . . upsets expectations based in prior law." Landgraf, 511 U.S. at 269. For instance,

> [e]ven uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct: a new property tax or zoning regulation may upset the reasonable expectations that prompted those affected to acquire property; a new law banning gambling harms the person who had begun to construct a casino before the law's enactment or spent his life learning to count cards.

Id. at 269 n.24.

¶175 More generally——and apart from the vested rights question——determining whether a statute has retroactive effect requires a "commonsense, functional judgment" regarding 'whether the new provision attaches new legal consequences to events completed before its enactment.'" Hadix, 527 U.S. at 357-58 (citation omitted). Wisconsin Stat. § 807.01(4) (2013-14) did not change the legal consequences of any events completed prior to that statute's enactment. At most, Lands' End can point to its offer of settlement, but an offer of settlement alone produces no "legal consequences" (at least, none relevant to the questions before us). And while Lands' End may have possessed "expectations" regarding 12 percent interest, they were not "settled" for the reasons already discussed——Lands' End had not

35

completed all that Wis. Stat. § 807.01(4) (2009-10) required. See Landgraf, 511 U.S. at 270.[14]

¶176 Because Wis. Stat. § 807.01(4) (2013-14) does not apply retroactively in this case, there is no need to presume

---

[14] Other than arguing that Wis. Stat. § 807.01(4) (2013-14) impairs a vested right, Lands' End does not develop arguments that may be read to explain why application of that statute to it is retroactive. I am hesitant to develop these arguments for Lands' End. I note that it is doubtful that the amendments to Wis. Stat. § 807.01(4) could be read to "attac[h] a new disability, in respect to transactions or considerations already past" under Justice Story's definition of retroactive laws. Vartelas v. Holder, 566 U.S. ___, 132 S. Ct. 1479, 1486-87 (2012) (alteration in original) (citation omitted); see supra ¶22. Admittedly, this is a more complicated question than appears at first glance, especially without briefing. See, e.g., Vartelas, 132 S. Ct. at 1487 (seemingly suggesting that severity of the effect of a statutory change affects whether an outcome "ranks as a 'new disability.'"); id. at 1495 (Scalia, J., dissenting) ("[T]he 'new disability in respect to past events' test provides no meaningful guidance. I can imagine countless laws that . . . impose 'new disabilities' related to 'past events' and yet do not operate retroactively.").

As stated, prior to 2011 Wis. Act 69, only a litigant who had (among other things) recovered a judgment was entitled to a 12 percent interest rate. Thus, even if a reduced interest rate might be considered a "new disability," it "attaches" to post-enactment conduct: the recovery of a judgment following an earlier, rejected offer of settlement. See id. at 1489-90 & n.7 (law prohibiting persons who have been adjudicated as a mental defective or who have been committed to a mental institution from possessing guns does not operate retroactively, as the law addresses a danger arising post-enactment, namely "mentally unstable persons purchasing guns"). 2011 Wis. Act 69 did not attach a disability to pre-enactment conduct, namely offers of settlement, because these offers did not entitle the offeror to any specific interest rate. It would be difficult to see why a contrary conclusion would not require a determination that 2011 Wis. Act 69 also attached a "new disability" to those who had merely filed lawsuits prior to the law's enactment, which is as much of a prerequisite for fulfillment of Wis. Stat. § 807.01(4) (2013-14) as making an offer of settlement.

36

that it applies prospectively——it <u>does</u> apply prospectively.[15] Lands' End never recovered a judgment prior to the enactment of Wis. Stat. § 807.01(4) (2013-14) and was thus never entitled to 12 percent interest on such a judgment.

## VI. WHETHER APPLICATION OF WIS. STAT. § 807.01(4) (2013-14) VIOLATES LANDS' END'S RIGHT TO DUE PROCESS OF LAW

¶177 As stated, Wis. Stat. § 807.01(4) (2013-14) does not apply retroactively and does not impair a vested right possessed by Lands' End. Lands' End rested its due process claim on the presence of an impaired vested right. Indeed, it does not explain how, in the absence of a vested right, it is being "deprive[d] of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Thus, I need not assess its due process claim further. <u>See</u> lead op., ¶82.[16]

## VII. WHETHER APPLICATION OF WIS. STAT. § 807.01(4) (2013-14) DENIES LANDS' END THE EQUAL PROTECTION OF THE LAWS

---

[15] The <u>Johnson</u> court concluded otherwise. <u>See, e.g.</u>, <u>Johnson</u>, 360 Wis. 2d 350, ¶27. As explained, I concur in the lead opinion's decision to overrule <u>Johnson</u>.

[16] In conducting its due process analysis, the <u>Johnson</u> court erroneously stated that "[i]f retroactive legislation causes 'substantial impairment of a vested right,' it is unconstitutional unless justified by a significant and legitimate public interest." <u>Johnson</u>, 360 Wis. 2d 250, ¶15 (citation omitted). As discussed above, in <u>Society Insurance v. Labor & Industry Review Comm'n</u>, 2010 WI 68, 326 Wis. 2d 444, 786 N.W.2d 385, we explained: "[R]equiring a showing of a 'significant and legitimate public purpose' in the course of a due process challenge [to retroactive legislation] improperly subjects the retroactive legislation to a heightened level of scrutiny. Retroactive legislation must be 'justified by a rational legislative purpose.'" <u>Society Ins.</u>, 326 Wis. 2d 444, ¶30 n.12.

¶178 Lands' End does not argue that a fundamental right or suspect class is at issue, so rational basis applies to Lands' End's equal protection challenge to Wis. Stat. § 807.01(4) (2013-14). See Sperry Corp., 493 U.S. at 65; Alger, 360 Wis. 2d 193, ¶39. Legislation is upheld under rational basis review "unless it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest." Alger, 360 Wis. 2d 193, ¶39.

¶179 The classification identified by Lands' End is rational. The legislature needed to determine a cut-off point for application of the old 12 percent interest rate. "[The legislature] could have rationally concluded that only those who are successful [in their litigation] realize a benefit therefrom sufficient to justify" prevention of application of the new interest rate. Cf. Sperry Corp., 493 U.S. at 54, 65 (statute requiring "Federal Reserve Bank of New York to deduct and pay into the United States Treasury a percentage of any award made by the Iran-United States Claims Tribunal in favor of an American claimant before remitting the award to the claimant" did not violate equal protection by assessing a fee only against claimants who actually received an award, and not against all claimants). In other words, the legislature may have thought, reasonably, that those who had already obtained a judgment prior to passage of 2011 Wis. Act 69 had a greater claim to the 12 percent interest rate than did those who had simply made an offer but not obtained a judgment. Application of the new interest rate to the former group might have been viewed as

38

significantly more inequitable than application of the new interest rate to the latter group, since the latter group was still fully engaged in litigation with no guarantee of success.

¶180 Moreover,

> [t]he problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others.

Williamson v. Lee Optical of Okla., 348 U.S. 483, 489 (1955) (citations omitted). Perhaps the legislature, viewing 12 percent interest as a windfall and thus an "evil," wished to restrict its continued application, if at all, to only a small class of pending cases, and thought that application of 12 percent interest to all cases in which there had been offers of settlement, as opposed to cases in which there had been both offers of settlement and adequately-sized judgment awards, would have unduly expanded that class.

¶181 It was not irrational——and thus not unconstitutional—— for the legislature to draw its legislative line at parties who had actually obtained judgments greater than or equal to the amount specified in their earlier, rejected offers of

39

settlement, instead of at parties who had simply made offers of settlement.[17]

## VIII. WHETHER APPLICATION OF WIS. STAT. § 807.01(4) (2013-14) VIOLATES WIS. STAT. § 990.04 (2013-14)

¶182 Finally, Lands' End argues that application to it of the amendments to Wis. Stat. § 807.01(4) violates Wis. Stat. § 990.04 (2013-14). The portion of the statute cited by Lands' End provides:

> The repeal of a statute hereafter shall not remit, defeat or impair any civil or criminal liability for offenses committed, penalties or forfeitures incurred or rights of action accrued under such statute before the repeal thereof, whether or not in course of prosecution or action at the time of such repeal; but all such offenses, penalties, forfeitures and rights of action created by or founded on such statute, liability wherefore shall have been incurred before the time of such repeal thereof, shall be preserved and remain in force notwithstanding such repeal, unless specially and expressly remitted, abrogated or done away with by the repealing statute.

Wis. Stat. § 990.04 (2013-14).

---

[17] I do not apply the complicated five-factor equal protection test cited by Lands' End. See, e.g., Metro. Assocs. v. City of Milwaukee, 2011 WI 20, ¶64, 332 Wis. 2d 85, 796 N.W.2d 717. Though perhaps a useful tool in certain contexts, the overriding concern in equal protection cases not involving fundamental rights or suspect classes is whether the classification drawn by the legislature "has a rational basis," that is, whether "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Armour v. Indianapolis, Ind., 566 U.S. ___, 132 S. Ct. 2073, 2079-80 (2012) (citation omitted); see also, e.g., State v. Alger, 2015 WI 3, ¶39, 360 Wis. 2d 193, 858 N.W.2d 346. This test is well-established. See Armour, 132 S. Ct. at 2080. Such a rational basis is clearly present here, and proceeding through a five-factor test to confirm that fact is unnecessary.

¶183 Lands' End does not make clear to which of the categories specified in Wis. Stat. § 990.04 (2013-14) it believes the operation of Wis. Stat. § 807.01(4) (2009-10) belongs. As discussed above, however, Lands' End never fulfilled the requirements of § 807.01(4) (2009-10) before it was amended. Thus no liability, penalties, or forfeitures were incurred and no rights of action accrued before § 807.01(4) (2009-10) was repealed. At least with regard to the brief and undeveloped arguments made by Lands' End on this point, § 990.04 (2013-14) presents no impediment in this case.[18]

## IX. CONCLUSION

¶184 The legislature has broad authority to enact laws, including laws that apply retroactively. These laws are entitled to a presumption of constitutionality; the legislature, like this court, interprets the constitution and attempts to follow it. In passing 2011 Wis. Act 69 and amending Wis. Stat. § 807.01(4) (2009-10), the legislature reduced an interest rate

---

[18] At common law, "the repeal of a penal statute eliminated prosecution for past acts. The so-called abatement doctrine provided that repeal, even repeal by amendment, and even by amendment reducing the penalty, would require dismissal of the indictment under the earlier criminal statute." Antonin Scalia & Bryan A. Garner, Reading Law 264 (2012). Scalia and Garner note that this doctrine "has been regarded (perhaps erroneously) as an exception" to the presumption against retroactivity. Id. However, "[t]he United States and almost all the states have adopted saving statutes designed to eliminate the doctrine and to permit continued prosecution under the prior law." Id. The federal version of these savings statutes, at least according to Scalia and Garner, is found at 1 U.S.C. § 109 (id. at 264-65), and is somewhat similar in phrasing to Wis. Stat. § 990.04 (2013-14).

applicable to certain types of judgments. Lands' End recovered one of these judgments, but only <u>after</u> the relevant legislation had been enacted. Wisconsin Stat. § 807.01(4) (2013-14) does not have retroactive effect on Lands' End, even though it applies in the current case. Nor does Lands' End possess a vested right in the earlier interest rate.

¶185 No fundamental rights or suspect classes are involved in this case and the amendments made to Wis. Stat. § 807.01(4) pass the minimal test of rationality required by the constitutional guarantee of equal protection of the laws. Finally, Wis. Stat. § 990.04 (2013-14) does not bar application of Wis. Stat. § 807.01(4) (2013-14) to Lands' End. Consequently, the decision of the circuit court should be affirmed.

¶186 For the foregoing reasons, I respectfully concur.

¶187 DAVID T. PROSSER, J. *(dissenting).* For more than 150 years, the Wisconsin Legislature has sought to promote pretrial settlement and hold down costs in civil litigation.

¶188 The state's early statutes permitted a defendant to offer the plaintiff a specific judgment against the defendant. If the plaintiff accepted the offer and filed the appropriate papers, the plaintiff could have judgment against the defendant almost immediately. If the plaintiff declined the offer, however, and then failed to recover "a more favorable judgment," the plaintiff was required to pay the defendant's costs from the time of the offer. See, e.g., Wis. Stat. § 2789 (1878); Chi. & Nw. Ry. Co. v. Groh, 85 Wis. 641, 648, 55 N.W. 714 (1893).

¶189 In the 1970s the legislature strengthened the hand of plaintiffs in civil litigation. Wisconsin Stat. § 269.02(3) (1973) provided:

> (3) Settlement. After issue is joined but at least 20 days before trial, the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs. If the defendant accepts the offer and serves notice thereof in writing, before trial and within 10 days after receipt of the offer or within 40 days after service of the notice of trial, whichever is later, he may file the offer, with proof of service of the notice of acceptance, with the clerk of court. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, he shall recover double the amount of the taxable costs.

(Emphasis added.)

1

¶190 In 1980 the legislature added a tough provision on prejudgment interest when either party declined to accept an offer of settlement from the other party:

> 807.01(4) If there is an offer of settlement by the party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the rate of 12% per annum on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04(4) and 815.05(8).

See § 2, ch. 271, Laws of 1979. The 12 percent interest rate in Wis. Stat. § 807.01(4) was adopted at the same time the legislature increased interest rates from 7 percent to 12 percent per annum on a verdict and on execution upon judgment. See §§ 3-4, ch. 271, Laws of 1979, amending Wis. Stat. §§ 814.04(4) and 815.05(8).[1]

¶191 The language adopted in 1980 was the language in place on July 1, 2009, when Lands' End made an offer of settlement to the City of Dodgeville on the tax refund that Lands' End was seeking from the City's property tax assessment for 2008.

¶192 The issue presented in this case is whether the above-referenced language is applicable to Lands' End's claim, or whether new language adopted in 2011 nullified the effect of the older language for Lands' End.

---

[1] Section 5 of Chapter 271 read: "Applicability. The treatment or creation of sections 807.01(4), 814.04(4) and 815.05(8) of the statutes apply only to actions commenced on or after the effective date of this act." This provision made the interest increases entirely prospective.

I

¶193 This case is part of nearly a decade of continuous litigation between Lands' End and the City of Dodgeville over property tax assessments on six parcels of the corporation's land in the City. Much of the history is detailed in Lands' End's brief and in the record.

¶194 In 2005 the City of Dodgeville assessed the six parcels of land at $39,964,600 and imposed a tax of $1,169,665.73, which Lands' End paid under protest.

¶195 In 2006 the City assessed the six parcels at $47,332,300 and imposed a tax of $1,348,540.60, which Lands' End paid under protest.

¶196 Lands' End's claims for refunds of its alleged overpayments for 2005 and 2006 led to an 11-day trial before Iowa County Circuit Judge Edward E. Leineweber. On May 29, 2009, Judge Leineweber issued a 16-page memorandum decision concluding that the fair market value of Lands' End's property was $25,000,000 in both 2005 and 2006. After considering various additional submissions, the court filed detailed findings of fact, conclusions of law, and judgment on September 1, 2009.

¶197 Lands' End also challenged the City's 2007 assessment and tax and its 2008 assessment and tax, which were based on the same appraisal for the City that Judge Leineweber pointedly criticized in his May 29, 2009 memorandum decision.

¶198 On July 1, 2009, Lands' End made its offer of settlement on the requested tax refund for 2008. This offer was

3

made before the City appealed the September 1 judgment but after it had lost on the 2005 and 2006 assessments in the memorandum decision. Lands' End did not invoke Wis. Stat. § 807.01(4) until it responded to the 2008 property tax assessment.

¶199 On May 27, 2010, the court of appeals affirmed the decision of the circuit court on the 2005 and 2006 tax refunds. This court denied a petition for review on April 21, 2011. Consequently, Lands' End had a judgment, affirmed on appeal, about the invalidity of the City's 2005 and 2006 assessments 18 months before the legislature revised Wis. Stat. § 807.01(4).

¶200 Admittedly, the judgment applied to the 2005 and 2006 property tax assessments, not the 2008 assessment. However, the City upped the assessment in 2008 to $56,423,100, which the Board of Review reduced to $54,000,000 because of acknowledged errors. Upping the assessment to $54,000,000 for 2008 was unrealistic on its face because the City was relying on the same appraisal used in 2005 for property that had not changed.

¶201 This case is complicated by the timing of various court decisions. For example, in the 2008 case, Iowa County Circuit Judge William Dyke denied Lands' End's motion for summary judgment about five weeks <u>before</u> the court of appeals affirmed Judge Leineweber's September 1, 2009 judgment. His ruling was not reversed until September 12, 2013——a decision in which the court of appeals remanded the case to the circuit court "for entry of judgment in favor of Lands' End in the

4

amount of $724,292.68, plus statutory interest and any other interest or costs to which Lands' End may be entitled."[2]

¶202 Ultimately, the City of Dodgeville had to refund substantial tax overpayments to Lands' End for 2005, 2006, 2007, and 2008. The City had to pay interest on all these refunds. The issue here is whether the City of Dodgeville is required to pay 12 percent per annum interest on the $724,292.68 refund on the 2008 taxes——from the date of Lands' End's offer of settlement (July 1, 2009) until the amount is paid.

II

¶203 The bill that created Wis. Stat. § 807.01(4) in 1980 was authored by State Senator William Bablitch, who soon thereafter became a member of this court. In 1999 Justice Bablitch had the opportunity to explain that the purpose of Wis. Stat. § 807.01 is "to encourage settlement and accordingly, secure just, speedy and inexpensive determinations of disputes." Prosser v. Leuck, 225 Wis. 2d 126, 140, 592 N.W.2d 178 (1999) (citing Schmidt v. Schmidt, 212 Wis. 2d 405, 412-13, 569 N.W.2d 74 (Ct. App. 1997); White v. Gen. Cas. Co. of Wis., 118 Wis. 2d 433, 438, 348 N.W.2d 614 (Ct. App. 1984)).

¶204 Previously, the court of appeals had asserted that "[t]he purpose of imposing costs and interest under subsecs. (3) and (4) [of § 807.01] is punitive." Blank v. USAA Prop. & Cas. Ins. Co., 200 Wis. 2d 270, 279, 546 N.W.2d 512 (Ct. App. 1996)

---

[2] Curiously, the court of appeals did not decide Lands' End's 2007 tax refund claim until May 8, 2014.

5

(citing <u>Gorman v. Wausau Ins. Cos.</u>, 175 Wis. 2d 320, 329, 499 N.W.2d 245 (Ct. App. 1993)).

¶205 Whether the purpose of double costs and 12 percent interest for parties who reject offers of settlement is truly "punitive" is open to debate. But this court has said:

> The risk of being assessed the <u>penalty</u> of double costs under § 807.01(3) encourages parties to seriously assess their chances of winning a coverage or liability dispute. The party who rejects a settlement offer and forges ahead with litigation does so with the full knowledge of § 807.01(3) [and (4)] and that if not successful, they may be subject to double costs under § 807.01(3) [and 12 percent interest "from the date of the offer of settlement until the amount is paid"].

<u>Prosser</u>, 225 Wis. 2d at 147 (emphasis added).

### III

¶206 To determine whether Wis. Stat. § 807.01(4) is still applicable to the partial refund of Lands' End's 2008 property tax, we must engage in statutory interpretation, applying the principles in <u>State ex rel. Kalal v. Circuit Court for Dane County</u>, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110.

¶207 In 2008, Wis. Stat. § 807.01 was entitled "Settlement offers." It had five subsections. Subsection (3) contained the provision in which "the plaintiff shall recover double the amount of taxable costs." Subsection (4) read:

> If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04(4) and 815.05(8).

6

Wis. Stat. § 807.01(4) (2007-08).

¶208 Subsection (5) read: "Subsections (1) to (4) apply to offers which may be made by any party to any other party who demands a judgment or setoff against the offering party." Wis. Stat. § 807.01(5) (2007-08).

¶209 Three conditions must exist under Wis. Stat. § 807.01(4) (2007-08) for a party to qualify for 12 percent interest per annum "on the amount recovered." First, the party makes "an offer of settlement" to another party "under this section." Second, the "offer of settlement" "is not accepted" by the other party "within 10 days after receipt of the offer."[3] Third, the offering party recovers "a judgment which is greater than or equal to the amount specified in the offer of settlement."

¶210 If these three conditions are satisfied "the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid." These conditions and consequences are examined in turn.

A

¶211 Subsections (1), (2), and (3) of Wis. Stat. § 807.01 refer to "a written offer of settlement." These written offers of settlement are "served" on the other party. The party making an offer of settlement must "do so in clear and unambiguous

---

[3] The time limit is referenced in the three preceding subsections of the statute. See Wis. Stat. §§ 807.01(1), (2), and (3).

terms," <u>Ritt v. Dental Care Associates, S.C.</u>, 199 Wis. 2d 48, 76, 543 N.W.2d 852 (Ct. App. 1995), so that the offeree may "fully and fairly evaluate the offer from his or her own independent perspective," <u>id.</u> at 75 (citing <u>Testa v. Farmers Ins. Exch.</u>, 164 Wis. 2d 296, 302, 474 N.W.2d 776 (Ct. App. 1991)).

¶212 There is no dispute that this condition was satisfied by Lands' End.

B

¶213 There also is no dispute that Lands' End's offer of settlement was not accepted. The City opposed Lands' End's motion for summary judgment, and the case was litigated for several years.

C

¶214 Finally, Lands' End recovered a judgment against the City of Dodgeville after winning the 2013 appeal. Moreover, subsection (4) applied to offers made by <u>any</u> party to <u>any</u> other party who demands a <u>judgment</u> or setoff against the offering party. Wis. Stat. § 807.01(5). Lands' End demanded a judgment and ultimately received a judgment. The statute in 2009 and 2010 imposed no timing requirement for the judgment. Consequently, Lands' End satisfied every condition in the statute.

¶215 If a party satisfies all three conditions, "the party is <u>entitled</u> to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid." (Emphasis added.)

8

¶216 The words of a statute have meaning. To say that a party is "entitled" to something means that the party has been granted a legal right to or qualifies for that thing. See Entitle, Black's Law Dictionary 649 (10th ed. 2014); see also id. (defining "entitlement" as an "absolute right to a (usu. Monetary) benefit, such as social security, granted immediately upon meeting a legal requirement"); The American Heritage Dictionary of the English Language 615 (3d ed. 1992) ("To furnish with a right or claim to something . . . ."). Two cases by the Supreme Court of the United States in recent decades also defined "entitled" in terms of qualifying for a right or benefit, and both cases cited to an earlier edition of Black's in their analyses. See Ingalls Shipbuilding, Inc. v. Director, Office of Worker's Comp. Programs, 519 U.S. 248, 255-56 (1997) ("[T]he ordinary meaning of the word 'entitle' indicates that the 'person entitled to compensation' [in 33 U.S.C. § 933(g)(1)] must at the very least be qualified to receive compensation."); Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477 (1992) ("Both in legal and general usage, the normal meaning of entitlement includes a right or benefit for which a person qualifies, and it does not depend upon whether the right has been acknowledged or adjudicated. It means only that the person satisfies the prerequisites attached to the right."); see also Entitle, Black's Law Dictionary 532 (6th ed. 1990) ("To qualify for; to furnish with proper grounds for seeking or claiming.").

¶217 The "right" created by the statute was recognized implicitly in Gorman, 175 Wis. 2d at 329, where the court said:

9

"Nothing in sec. 807.01, Stats., requires a party to file a motion in order to recover costs. Rather, this statute mandates the court to impose costs and interest when the defendant rejects a valid offer of settlement and the plaintiff recovers a greater judgment." (Emphasis added.) The Prosser court stated that "the plain language [of the statute] provides that interest accrues throughout the litigation." Prosser, 225 Wis. 2d at 152.

¶218 Wisconsin Stat. § 807.01(4) then specifies what "the party" is "entitled" to——namely, (1) "interest at the annual rate of 12%," (2) "on the amount recovered," and (3) "from the date of the offer of settlement until the amount is paid." Subsection (4) of § 807.01 is different from a statute that employs a broad term like "compensation." Subsection (4) is very specific in directing that it is interest at a stated rate and for a stated period of time to which a prevailing party is entitled. In Upthegrove Hardware, Inc. v. Pennsylvania Lumbermans Insurance Co., 152 Wis. 2d 7, 13, 447 N.W.2d 367 (Ct. App. 1989), the court of appeals summed up the law when it said that the prevailing party "is seen as having 'recovered' the amount awarded in the judgment on the date of the settlement offer." (Emphasis added.)

IV

¶219 In the 1980 legislation, two statutes, Wis. Stat. §§ 814.04(4) and 815.05(8), were amended to increase the rate of interest from 7 percent to 12 percent. Ch. 271, Laws of 1979. Statutory interest rates needed to be raised at that time so

10

that parties did not have an incentive to delay payment. The 12 percent interest rate included in Wis. Stat. § 807.01(4) corresponded with the other changes. The legislature made clear that the change in rates was prospective when it said that "the statutes apply only to actions commenced on or after the effective date of this act."

¶220 Over the next 30-plus years, interest rates fell, but the 12 percent rate in the statutes was preserved because it supported the objective of the statutes to encourage pretrial settlement and prompt payment of judgments. When interest rates in the three statutes were reduced in 2011, the country had historically low interest rates and adjustments may have appeared necessary. But there is no evidence that the legislature intended to undermine the basic objectives of Wis. Stat. § 807.01(4).

¶221 In her dissenting opinion in Prosser v. Leuck, Justice Ann Walsh Bradley observed:

> There can be little doubt that Wis. Stat. § 807.01 exists to encourage parties to settle their cases rather than take them to trial. Beacon Bowl, Inc. v. Wisconsin Elec. Power Co., 176 Wis. 2d 740, 501 N.W.2d 788 (1993); DeMars v. LaPour, 123 Wis. 2d 366, 373, 366 N.W.2d 891 (1985). To the extent that § 807.01 forces parties to carefully analyze their realistic chances of liability or recovery and reevaluate the merits of taking their case to trial, the statute serves an important purpose. Settlement is to be encouraged rather than discouraged in the law.

Prosser, 225 Wis. 2d at 155 (Ann Walsh Bradley, J., dissenting).

¶222 In 2009, Wis. Stat. § 807.01(4) gave notice to all litigants that its provisions would affect conduct that had not

11

yet occurred. Therefore, the party to whom an offer of settlement was made had notice of the consequences that would follow if a judgment in a greater amount were recovered.

¶223 Conversely, parties who made statutory offers of settlement relied on the entitlement created by the statute. Wisconsin Stat. § 801.01 created clear expectations that reasonable people could and did rely on as they proceeded in litigation.

¶224 Retroactive application of the 2011 changes in the law undermines the entitlement to 12 percent interest set out in the statute. It creates an incentive to extend litigation and thereby delay payment. The City is effectively being rewarded for overtaxing Lands' End and for stringing out the litigation that followed.[4] It should be noted that Lands' End would have been required to pay 1 percent interest every month, plus potential penalties, if it had not timely paid the 2008 tax and if it had not eventually succeeded in court. Wis. Stat. § 74.47. It is hard to believe the legislature intended the inequitable result of retroactively changing the interest rates for offers of settlement made long before the statutory changes

---

[4] In _S.A. Healy Co. v. Milwaukee Metropolitan Sewerage District_, 60 F.3d 305, 308 (7th Cir. 1995), Judge Posner skillfully analyzed one problem that Wis. Stat. § 807.01(4) sought to address: "[D]elay in accepting the plaintiff's demand allows the defendant to earn interest on money that (it is subsequently determined) should really be the plaintiff's. The award of interest from the date of the settlement demand deprives the defendant of this incentive to reject rightful demands."

but not changing the rate for taxpayers who owe additional property taxes.

¶225 These considerations are the foundation of the court of appeals decision in Johnson v. Cintas Corp. No. 2, 2015 WI App 14, 360 Wis. 2d 350, 860 N.W.2d 515, which concluded that the retroactive application of the 2011 changes was unconstitutional. I agree with the court's comprehensive, well-written opinion and would affirm its determination.[5] In overruling the Johnson case and affirming the circuit court's ruling in the present case, this court is likely undermining the reasonable expectations of multiple other parties who made offers of settlement in conformity with the statute.

V

¶226 Although I fully support the court of appeals' decision in Johnson, the lead opinion in this case makes it

---

[5] Johnson v. Cintas Corp. No. 2, 2015 WI App 14, 360 Wis. 2d 350, 860 N.W.2d 515, is consistent with court decisions in other states. See, e.g., Dubois v. State Farm Ins. Co., 571 So. 2d 201, 207 (La. Ct. App. 1990) (concluding that amendment to statutory interest rate was "substantive law" that "applie[d] only to recovery in accidents occurring after its passage"), approved by Socorro v. City of New Orleans, 579 So. 2d 931, 944 (La. 1991); Herring v. Golden State. Mut. Life Ins. Co., 318 N.W.2d 641, 646 (Mich. Ct. App. 1982) (applying statute amending interest rate was improper where "the action was filed over a year prior to the effective date of the statute" and "the controversy arose before the statute was enacted").

For further insights regarding jurisdictions that decline to give retroactive effect to changes in interest rates, see generally Diane M. Allen, Annotation, Retrospective Application and Effect of State Statute or Rule Allowing Interest or Changing Rate of Interest on Judgments or Verdicts, 41 A.L.R. 4th 694, §§7, 11 (1985 & Supp. June 2015).

necessary to address the lead opinion's conclusion that Lands' End was required to obtain a legally enforceable "judgment" before the 2011 change in the law. The lead opinion states:

> Lands' End did not acquire a legally enforceable right to recover interest until it recovered a judgment. . . . Changing the interest rate in Wis. Stat. § 807.01(4) simply alter[ed] the legal consequence of events not yet completed. Before Lands' End recovered a judgment, its right to interest was inchoate.

Lead op., ¶72. This holding penalizes Lands' End not only because it abandons the governing principles of the statute but also because it rests on the timing of the circuit court's mistaken ruling on summary judgment.

¶227 Clearly, Lands' End should have received a favorable judgment on its 2008 assessment before the amendment to Wis. Stat. § 807.01(4) in December 2011. Unfortunately, the actual judgment did not come until after the circuit court's decision was reversed. However, before the circuit court's mistaken ruling, Lands' End had been successful in other litigation against the City on the same property. The legal foundation had already been built for Lands' End's eventual success on its suits on the 2008 assessment as well as the 2007 assessment. The Iowa County Circuit Court had already determined that the City's assessments for 2005 and 2006 were incorrect, and the City had conceded that there was no material change in the value of the property between 2006 and 2008. See Lands' End, Inc. v. City of Dodgeville, No. 2010AP1185, unpublished slip op., ¶23 (Wis. Ct. App. Sept. 12, 2013); see also Lands Ends, Inc. v.

14

<u>City of Dodgeville</u>, Nos. 2013AP1490, 2013AP1491, and 2013AP1492, unpublished slip op., ¶17 (Wis. Ct. App. May 8, 2014).[6]

¶228 The lead opinion concludes that Lands' End's right to the 12 percent interest rate was "contingent on a subsequent determination by a court." Lead op., ¶77. But the lead opinion forces Lands' End to bear the burden of the right court making the wrong determination at a critical time. Had the same court

_____

[6] As explained by the court of appeals,

> [T]he City argues that issue preclusion does not apply in this case . . . . [T]he flaw in the City's issue preclusion argument is that the City miscasts the "issue" to which issue preclusion applies. The "issue" is not the proper 2008 assessed value of Lands' End's property. Rather, we determine here that issue preclusion applied only to the "issue" of the correct 2006 assessment. The resolution of that issue through the application of issue preclusion does not, by itself, establish the proper 2008 assessed value. Rather, it is the combination of issue preclusion and a new undisputed fact in the present case that persuades us that Lands' End is entitled to summary judgment. The new undisputed fact is that the value of the subject property did not materially change between 2006 and 2008.
>
> . . . .
>
> Giving preclusive effect to Judge Leineweber's finding that the 2006 value of the property was $25,000,000, and combining that finding with the undisputed fact in this case that the value of the property essentially stayed the same, leads us to conclude that the value of the property in 2008 must be $25,000,000. Because there is no genuine dispute that the 2008 value of the property is $25,000,000, we conclude that Lands' End is entitled to judgment as a matter of law.

<u>Lands' End, Inc. v. City of Dodgeville</u>, No. 2010AP1185, unpublished slip op., ¶¶10, 29 (Wis. Ct. App. Sept. 12, 2013).

15

decided the case six weeks later, the result would have been different.

¶229 For the foregoing reasons, I respectfully dissent.

¶230 I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK joins this dissent.